UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| WESCO INSURANCE COMPANY,<br><br>Plaintiff(s),<br><br>v.<br><br>SMART INDUSTRIES CORPORATION,<br><br>Defendant(s). | Case No. 2:16-CV-1206 JCM (CWH)<br><br>ORDER |

Presently before the court is a motion for summary judgment filed by defendants Hi-Tech Security, Inc. ("Hi-Tech") and William Roseberry ("Roseberry"). (ECF No. 37). Plaintiffs, the heirs and estate of decedent Charles Wyman ("Mr. Wyman"), filed a response (ECF No. 46), to which defendants replied. (ECF No. 48).

Also before the court is defendant Smart Industries Corporation's ("Smart Industries") motion for summary judgment. (ECF No. 38). The heirs and estate of Mr. Wyman filed a response (ECF No. 44), to which Smart Industries replied. (ECF No. 50).

**I.    Facts**

The instant action involves a wrongful death and survival claim filed against the defendants after an allegedly defective arcade machine induced Mr. Wyman's death on October 4, 2015. (ECF No. 18-A at 5).

Five days prior to his death, Mr. Wyman, acting in his role as a route manager employed by Nickels and Dimes Incorporated ("Nickels and Dimes"), inspected an arcade vending machine at the Boulevard Mall in Las Vegas, Nevada. (ECF No. 1 at 3). The scope of Mr. Wyman's employment frequently necessitated the servicing of similar machines and the removal of coins from these machines. *Id.* at 2.

**James C. Mahan
U.S. District Judge**

Smart Industries manufactured, distributed, and/or sold the vending machine named the "Clean Sweep 69 Dual 7th Generation," a "claw" arcade game wherein the user pays coins in an attempt to obtain a prize. *Id.* at 3. A reversal of the green wire grounding conductor and the hot black ungrounded wire inside the machine catalyzed the incident, as the machine operated in a dangerously energized electric state.[1] Nickels and Dimes ordered the machine at issue as part of a lot of twelve units on November 15, 2004. (ECF No. 38 at 3). The machines left Smart Industries' hands on December 16, 2004. *Id.*

On September 29, 2015, Mr. Wyman was in the Boulevard Mall for the purpose of maintaining or servicing the arcade game. (ECF No. 37 at 3). Unaware of the mechanism's defective nature, Mr. Wyman commenced his duties and started to examine the machine. (ECF No. 1 at 3). Upon inspecting the machine, Mr. Wyman came into contact with its energized parts and received an electric shock. *Id.*

Roseberry, a security guard employed by Hi-Tech, received an alert by an employee of the store Shoe Palace at approximately 9:20 a.m. that someone was lying on the ground next to the device.[2] (ECF No. 37 at 3). Roseberry asked Mr. Wyman if he was okay, to which he received no response. *Id.* Because Roseberry was unable to move Mr. Wyman, he radioed for his supervisor, Kim Anderson ("Anderson"), who arrived within a couple minutes. *Id.* at 4. When attempting to grab Mr. Wyman by his arm, Anderson received an electrical shock. *Id.* At about the same time, a mall dispatcher named Blake told her that 911 said to "stand down." *Id.*

When the Clark County Fire Department arrived to unplug the machine, Mr. Wyman had already remained in an energized state for fifteen minutes. (ECF No. 1 at 3). Paramedics

---

[1] An investigation conducted by the Nevada Occupational Safety and Health Administration after Mr. Wyman's death confirmed that the reversal of the wires caused the accident.

[2] Hi-Tech furnishes security services. Boulevard Ventures, LLC and Hi-Tech entered into a security service agreement on September 1, 2015 for Hi-Tech to furnish security services to the Boulevard Mall. (ECF No. 37 at 3). As part of this agreement, Hi-Tech was to furnish uniformed security guards to provide adequate security services, including the guards' best efforts to promote and protect the mall's employees, guests, and invitees as a means of protecting the client's real and personal property. *Id.*

transported the unconscious Mr. Wyman to Sunrise Hospital, where he remained until his death. *Id*.

Wesco Insurance Company ("Wesco") is the subrogree of its insured, Nickels and Dimes. (ECF No. 19). Jennifer and Bear Wyman ("heirs") are the widow and son of the late Mr. Wyman, and brought a wrongful death claim against Smart Industries as his lawful heirs pursuant to NRS 41.085. (ECF No. 18-A at 2). Jennifer Wyman and Vivian Soof, the joint special administrators of Mr. Wyman's estate ("the estate"), also brought an action under NRS. 41.100, Nevada's survival statute. *Id*.

Mr. Wyman's heirs and estate allege that Hi-Tech and Roseberry failed to remove Mr. Wyman away from the arcade vending machine, and also failed to take reasonable measures, such as unplugging the device, to stop the machine from electrocuting him. (ECF No. 1 at 5).

The heirs and estate of Mr. Wyman filed their complaint in the Eighth Judicial District Court of Clark County, Nevada, on October 10, 2016. (ECF No. 18-A). The heirs and estate assert five claims against Smart Industries: (1) strict products liability; (2) negligence; (3) breach of express and/or implied warranties; (4) *res ipsa loquitur*; and (5) corporate negligence/vicarious liability. (ECF No. 18-B at 6-10, 29-30.) They further assert two claims against Hi-Tech: (1) negligent training, hiring, and supervision; and (2) corporate negligence/vicarious liability. Finally, the lone claim against Roseberry is for negligence. *Id.* at 14-17.

Wesco filed its complaint in the Eighth Judicial District Court of Clark County, Nevada on May 31, 2016. (ECF No. 1). In its complaint, Wesco asserts general negligence and strict liability claims solely against Smart Industries. *Id*.

Following removal of the case to federal court on May 31, 2016, Smart Industries moved to consolidate the family's suit with the action brought by Wesco on April 20, 2017. (ECF No. 19). The court granted the motion on August 4, 2017. (ECF No. 33).

On November 1, 2017, Smart Industries filed a motion for summary judgment, contending that the estate may not seek recovery for Mr. Wyman under NRS 41.100. (ECF No. 40). The court denied the motion on July 5, 2018. (ECF No. 52).

Currently before the court are two separate motions for summary judgment. First, Hi-Tech and Roseberry move for summary judgment on the basis that they fulfilled their contractual duty to Boulevard Mall and responded appropriately upon hearing of Mr. Wyman's accident. (ECF No. 37). Smart Industries moves for summary judgement, arguing that the machine in question did not leave its manufacturer in the defective condition as reported by the Nevada OSHA. (ECF No. 38). The court will address these issues in due course.

## II.     Legal Standard

The Federal Rules of Civil Procedure allow summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

For purposes of summary judgment, the court construes disputed factual issues in favor of the non-moving party. *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990). The nonmoving party must "set forth specific facts showing that there is a genuine issue for trial" as a prerequisite for the court to deny a motion for summary judgment. *Id.*

In determining summary judgment, a court applies a burden-shifting analysis. The moving party must first satisfy its initial burden. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

By contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the non-moving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that

**James C. Mahan**
**U.S. District Judge**

- 4 -

party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).

In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations not supported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, the court may grant summary judgment. *See id.* at 249–50.

**III.    Discussion**

   ***a.    Hi-Tech and Roseberry's motion for summary judgment***

Whether summary judgment is appropriate is a matter of federal law; however, state law controls the substantive issues with respect to negligence claims. *Nevada Power Co. v. Monsanto Co.*, 955 F.2d 1304, 1307 n.2 (9th Cir. 1992). To prevail on a negligence claim, a plaintiff must show that (1) defendants owed the decedent a duty of care; (2) defendants breached that duty; (3)

this breach was the actual case of his injury; (4) the breach was the proximate cause of his injury; and (5) plaintiff suffered damages. *Scialabba v. Brandise Const. Co., Inc.*, 112 Nev. 965, 967, 921 (Nev. 1996). The existence of a duty is "a question of law to be determined solely by the courts." *Turner v. Mandalay Sports Entertainment, LLC*, 124 Nev. 213, 221 (Nev. 2008). Whether defendant owed plaintiff a duty, under the circumstances, is a question of law determined by the court. *Lee v. GNLV Corp.*, 117 Nev. 291, 297 (Nev. 2001). Breach and proximate cause, however, are generally left for the jury to decide. *Id*.

A mall, which contains multiple businesses within its premises, has the duty to exercise ordinary care and prudence to render the premises reasonably safe for everyone using the premises. *See Twardowski v. Westward Ho Motels*, 86 Nev. 784, 787 (1970). Accordingly, the standard of care is that of an ordinarily prudent business. *Id*. However, the standard of care varies according to the dangers which are attendant to the activities and the facts and circumstances of each individual case. *See Early v. NLV Casino Corp.*, 100 Nev. 200, 204 (1984). The court in *Early* cites the reasonable cause to anticipate (foreseeability language) in the Restatement (Second) of Torts, 344, comment f (1965):

> Since the possessor is not an insurer of the visitor's safety, he is ordinarily under no duty to exercise any care until he knows or has reason to know that the acts of the third person are occurring, or are about to occur. He may, however, know or have reason to know from past experience that there is likelihood of conduct on the part of third persons in general which is likely to endanger the safety of the visitor, even though he has no reason to expect it on the part of any particular individual.

Restatement (Second) of Torts § 344.

In their motion, defendants Hi-Tech and Roseberry cite the security service agreement with Boulevard Ventures for the Boulevard Mall premises, which included providing security services such that the security guards' "best efforts" were to be made "to promote the safety of [c]lient's employees, guests, and invitees . . . ." (ECF No. 37 at 6).

Hi-Tech and Roseberry note they had no specific training or safety protocol which addressed any medical assistance for an electrical incident, arguing that they took appropriate steps

James C. Mahan
U.S. District Judge

to provide immediate assistance to Mr. Wyman, including alerting 911 and intending to perform CPR. *Id*. Once Anderson received the electric shock, security informed her to do nothing further but wait for the arrival of medical professionals. *Id*.

In support of their motion, the two defendants offer the aforementioned *Lee* as an analogous case. *Id.* at 8. In *Lee*, the Nevada Supreme Court addressed a restaurant owner's limited duty to an intoxicated patron who became ill while eating in the establishment. 117 Nev. 291, 293. While waiting for paramedics, restaurant staff attempted to perform CPR, but no mouth-to-mouth resuscitation. *Id*. The patron died during transport to a nearby hospital as efforts to clear his airway had proved unsuccessful. *Id.* at 294. The court held that a business does have a duty to a patron, but that duty is limited and, in this case, did not include performing the Heimlich maneuver, under the circumstances. *Id.* at 298. A business satisfies its duty by assessing the situation, calling for professional help, and monitoring the patron until medical assistance arrives. *Id.* at 299.

In their response, the heirs and estate of Mr. Wyman argue that by failing to immediately unplug the machine, Hi-Tech's officers fell below the standard of care responsible for a response to an electrical incident and thus acted unreasonably. (ECF No. 46 at 3). The court agrees. In negligence cases, self-imposed guidelines and internal policies are generally admissible as relevant on the issue of failure to exercise due care. *K-Mart Corp. v. Washington*, 109 Nev. 1180, 1189 (1993). According to Hi-Tech's training manuals and the testimony of the company president, Robert Cox, the company's policy for electrical incidents is to immediately cut the source of power, which in this case would translate to unplugging the machine. (ECF No. 46 at 3).

In a video shown by Hi-Tech to its employees as part of a "First Aid Refresher" course, the instructions advise to immediately eliminate the power source and to perform CPR. *Id.* at 6. Although Hi-Tech does not have written policies and procedures for response to electrical incidents, its employees are expected to follow the instructions in the refresher video when responding to electrical incidents. (ECF No. 46-1 at 42:13-23). Anderson claims she knew the refresher video instructs employees to eliminate the power source, but did not do so because she "was not thinking about that." (ECF No. 46-4 at P. 74:5-11). Roseberry does not recall any

- 7 -

training in response to electrical incidents and states he does not know how to respond to them. (ECF No. 46-6 at P. 26:7-10, 31:4-32:10).

Robert Cox's testimony shows that Hi-Tech's employees knew or should have known to immediately unplug the arcade vending machine. However, there is still a question as to whether Hi-Tech ever showed Roseberry the video in question, or if he attended the refresher course. As these are questions appropriate for the discovery stage of the litigation process, the court will deny the motion for summary judgment submitted by defendants Hi-Tech Security, Inc. and William Roseberry.

### b. *Smart Industries' motion for summary judgment*

"In a strict liability case . . . the burden of proving liability rests upon the plaintiff, who, 'must still establish that his injury was caused by a defect in the product, and that such defect existed when the product left the hands of the defendant.'" *Griffin v. Rockwell Int'l*, 96 Nev. 910, 100 (1970) (quoting *Ginnis v. Mapes Hotel Corp.*, 86 Nev. 408, 413 (1970)).

In its motion, Smart Industries disagrees with the belief that an inherent design defect in the machine during the production phase led to Mr. Wyman's death. (ECF No. 38 at 18-19). Smart Industries heavily relies on the testimony of Charles Scribner ("Scribner"), a former smart employee, who from 2000 to 2005 was one of Smart's two quality control experts. *Id.* at 5-6. When Scribner looked at a photo of the machine's interior taken after the incident, he noticed that the faceplate was not yet attached to the harness and energy box. *Id.* at 6-7. Scribner then stated, "That's not how it would have been in the game when it was originally done." *Id.* at 7. According to Mr. Scribner, the photo showed the wiring harness entering the box from the top, instead of from the bottom of the box. *Id*. This is contrary to the intended wiring schematic and would thus theoretically not pass quality control inspection. *Id*.

Smart Industries also questions the validity of the Nevada OSHA report, specifically due to the perceived speculative statements made by the state's investigator, Jason Burns. *Id.* at 13-14. Although Burns concluded the miswiring caused Mr. Wyman's injury when he contacted the energized box, Burns opined that the "condition was not readily identifiable under the circumstances." During his testimony, Reinhard Bangerter, a regional manager for Nickels &

James C. Mahan
U.S. District Judge

- 8 -

Dimes, stated that he had no knowledge about when the fuse-holder was wired; making his statement to the Nevada OSHA that the wiring had to be a "manufacturer defect" speculative. *Id.* at 19.

The heirs and estate of Mr. Wyman highlight the dearth of evidence and specificity regarding Smart Industries' quality control procedures. (ECF No. 44). Primarily, they note the pellucid lack of detail in Scribner's testimony. Scribner is unable to confirm whether the machine in question received testing before leaving Smart Industries' hands and notes that a final assembly sheet would be required to know whether the machine ever received inspection. (ECF No. 44-1 at P. 34:13-37:1).

In his testimony, Scribner notes that Smart Industries' employees receive no training in quality control and that the company does not maintain written quality control procedures. *Id.* at 51:16-23, 51:24-52:5. Scribner also confirmed that Smart Industries never trained its employees on how to correctly fill out the final assembly sheet and that he cannot testify that the machine was properly wired when it left the Smart Industries factory. *Id.* at 52:6-8, 53:9-13. Brian Harmon, an employee of Smart Industries, testified that he (1) did not know which machines in the lot received testing, (2) whether Smart Industries tested all of the machines, or (3) whether the machine in question received testing. (ECF No. 44-4 at P. 48:5-49:2).

Smart Industries has failed to establish that there are no genuine issues of fact and that it is entitled to judgment as a matter of law, as required by FRCP 56. Given Smart Industries' lack of evidence regarding its quality control procedures and the absence of documentation regarding this specific unit, the court will deny Smart Industries' motion for summary judgment.

**IV. Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that defendants Hi-Tech Security Inc. and William Roseberry's motion for summary judgment (ECF No. 37) be, and the same hereby is, DENIED.

. . .

. . .

James C. Mahan
U.S. District Judge

IT IS FURTHER ORDERED that defendant Smart Industries Corporation's motion for summary judgment (ECF No. 38) be, and the same hereby is, DENIED.

DATED July 17, 2018.

_____
UNITED STATES DISTRICT JUDGE