1  **UNITED STATES DISTRICT COURT**

2  **DISTRICT OF NEVADA**

3  \*\*\*

WESCO INSURANCE CO.,

   Plaintiff,

  v.

SMART INDUSTRIES CORP.,

   Defendants.

Case No.: 2:16-cv-01206-JCM-EJY

**ORDER**

Before the Court is Hi-Tech Security Inc. and William Roseberry's (collectively "Hi-Tech") Motion for Determination of Good Faith Settlement ("Hi-Tech's Motion" or the "Motion"). ECF No. 174. The Court has considered Hi-Tech's Motion, Plaintiffs Jennifer Wyman, Bear Wyman, and the Estate of Charles Wyman's Limited Opposition and Joinder to Hi-Tech's Motion (ECF No. 175), Defendant Smart Industries Corporation's Opposition to Hi-Tech's Motion (ECF No. 176), Responses to Hi-Tech's Motion filed by Plaintiffs Sara Rodriguez and Jacob Wyman (ECF No. 177), and Hi-Tech's Reply in Support of the Motion (ECF No. 178). The Court finds as follows.

**I. Background**

The underlying case arises out of the electrocution and death of Charles Wyman who was employed by Third-Party Defendant Nickels and Dimes on September 29, 2015, when he was working on an arcade machine at the Boulevard Mall.[1] While the parties do not agree on who may be responsible for Mr. Wyman's death, let alone the apportionment of that responsibility, there is little disagreement about what actually occurred on the day he was electrocuted. To this end, uncontested facts relevant to the instant motion include:

- Smart Industries manufactured the machine on which Mr. Wyman was working on the day he was electrocuted;

---

[1] Boulevard Ventures, the owner of the Boulevard Mall, previously entered into a settlement with Plaintiffs, which was confirmed by the state court to be in good faith. ECF No. 174 at 5. Approval of this settlement, which was reached in a separate case, apparently remains pending, but has been consolidated with the instant matter. The Court notes no response was filed to the Boulevard Ventures motion and, as such, the motion shall be considered promptly.

1

- Nickels and Dimes employed Mr. Wyman and owned the machine on which Mr. Wyman was working on the day of the injury that led to his death;
- Hi-Tech operated a security station and provided security services to the Boulevard Mall on the day Mr. Wyman was injured;
- Hi-Tech's officer, Mr. Roseberry arrived on the scene of the event, followed by a supervisor;
- Mr. Wyman did not unplug the machine before commencing his work;
- The officers who arrived on the scene of the injury did not attempt to unplug the machine; nor did they cut off Mall power to the machine after arriving on the scene;
- Mr. Roseberry's supervisor received an electric shock when she attempted to pull Mr. Wyman out of the machine;
- Firefighters, who were called to the scene by Hi-Tech employees, disconnected power to the machine upon arrival; and,
- Although life saving measures were attempted, Mr. Wyman died from his injuries.

In addition to the above uncontested facts, there is evidence that Mr. Wyman may have used marijuana at some time before the incident resulting in his death, and that he may have been impaired at the time he was working on the arcade machine. There is also argument that the arcade machine design and manufacture was defective. The individual Plaintiffs and Smart Industries further argues that Hi-Tech was negligent when responding to the incident.[2]

Hi-Tech proposes to pay, and Plaintiffs have accepted, a settlement of $50,000.[3] Hi-Tech contends this is "ultimately a strict products liability case," and the case against Hi-Tech is at best extremely weak. ECF No. 174 at 7. Hi-Tech contends that even if Plaintiffs were able to prove some breach of duty, Mr. Wyman was non-responsive when Mr. Roseberry arrived on the scene and, therefore, proving causation will be extremely difficult. *Id.* at 4, Ex. 1. It is true that there are no cross-claims against Hi-Tech, as it states, and Hi-Tech also avers that it is a dissolved corporation with no "significant assets" other than the $1,000,000 insurance policy that covers this claim (including Mr. Roseberry). Finally, Hi-Tech states that Mr. Roseberry is "elderly," retired, and has no "significant assets" other than the insurance policy that covers him. ECF No. 174 at 9.

---

[2] Hi-Tech filed a third-party complaint against Nickels and Dimes alleging contractual indemnity.

[3] Smart Industries has not filed a claim against Nickels and Dimes. Further, despite acceptance of this offer, Plaintiffs Jennifer Wyman, Bear Wyman, and the Estate of Charles Wyman filed a limited opposition to Hi-Tech's Motion claiming that factual contentions in the Motion "place the Wyman case in a negative light and are … not necessary for determination of a good faith settlement . . . ." ECF No. 175. Plaintiffs Sara Rodriguez and Jacob Wyman state they have reached an agreement with the other Plaintiffs regarding distribution of the $50,000. ECF No. 177. Otherwise, these Plaintiffs take no notable position on the good faith settlement. *Id.*

2

Smart Industries (sometimes "Smart") opposes the good faith settlement. ECF No. 176. Smart states that the settlement amount is neither commensurate with the facts of the case nor the potential exposure to the "defendants." *Id*. Smart contends that "a reasonable jury could find that Hi-Tech failed its heightened duty to aid" Mr. Wyman based on Hi-Tech's contract to provide security services and failure to disable power to the machine on which Mr. Wyman was working when electrocuted. *Id*. at 6. Smart says that Hi-Tech security officers received "shock training" and therefore should have easily "discerned" that Mr. Wyman was "undergoing an electrical shock." *Id*. at 6-7. Smart argues that Hi-Tech "could have brought about a quicker remedy to the situation" based on (i) the training its guards received, (ii) that the arcade machine lights were on, and (iii) that Mr. Wyman performed maintenance on the arcade machine "using electrician's tools in full view of Hi-Tech's monitoring security guards," which were next to him when he became nonresponsive "inside the lit-up arcade machine." *Id*. at 7-8. Smart Industries also argues that Hi-Tech's guards failed to demonstrate skills relating to electrocutions on which they were trained, did not cut the power to the machine, and did not perform CPR. *Id*. Smart Industries then admits that "no expert offered an opinion as to whether the Decedent might have lived longer if the arcade machine's power [sic] shutoff and CPR was performed sooner," and aver that a jury could surmise this conclusion based on the facts. *Id*. at 8.

Smart Industries also complains about the settlement amount offered in comparison to the total value of Hi-Tech's insurance coverage of $1 million. *Id*. The offer of $50,000 is one-twentieth of the value of the policy and, as such, Smart argues that this factor weighs against a good faith finding. *Id*. In sum, Smart Industries argues that it "would be prejudiced by a determination of good faith because" approving the settlement could "leave Smart with an unproportioned obligation to pay for a sizeable award resulting from a wrongful death claim." *Id*. at 9. Smart says there is a "dearth of evidence" regarding the machine at issue because it purged its own records having received no complaints about the machine "for approximately ten years," and that third-party defendant Nickels and Dimes has no records of maintenance. *Id*. For this reason, Smart Industries complains that there is "slim" direct evidence to begin with. *Id*.

## II. Discussion

### A. The Applicable Legal Standard

Nevada law expressly provides a process for good faith settlement. NRS 17.245 states, in pertinent part:

> 1. When a release or a covenant not to sue or not to enforce judgment is given in good faith to one of two or more persons liable in tort for the same injury or the same wrongful death:
> (a) It does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms so provide, but it reduces the claim against the others to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, whichever is the greater; and
> (b) It discharges the tortfeasor to whom it is given from all liability for contribution and for equitable indemnity to any other tortfeasor.

The Court has discretion to determine whether a settlement is in good faith under the statute based on all the relevant facts available. *Velsicol Chem. Corp. v. Davidson*, 811 P.2d 561, 653 (Nev. 1991). Among the factors a court may consider when making a good faith determination are "[1] [t]he amount paid in settlement, [2] the allocation of the settlement proceeds among plaintiffs, [3] the insurance policy limits of settling defendants, [4] the financial condition of settling defendants, and [5] the existence of collusion, fraud or tortious conduct aimed to injure the interests of non-settling defendants." *The Doctors Co. v. Vincent*, 98 P.3d 681, 686 (Nev. 2004) (quoting *In re MGM Grand Hotel Fire Litig.*, 570 F. Supp. 913, 927 (D. Nev. 1983)). However, these factors are not exhaustive. *Duk v. MGM Grand Hotel, Inc.*, 320 F.3d 1052, 1060-61 (9th Cir. 2003), *as amended on denial of reh'g* (Apr. 17, 2003). In fact, "Nevada law includes no requirement that a court consider or limit its analysis to the *MGM* factors...." *Clark County School District v. Travelers Casualty and Surety Company of America*, Case No. 2:13-cv-01100, 2016 WL 4443160, at *4 (D. Nev. Aug. 18, 2016) (citation omitted).

Nevada's statute was enacted "to encourage settlements by discharging all liability for contribution by a settling tortfeasor to others upon a finding that the settlement was entered in 'good faith'." *Kerr v. Wanderer & Wanderer*, 211 F.R.D. 625, 631–32 (D. Nev. 2002) (quoting *In re MGM Grand Hotel Fire Litig.*, 570 F. Supp. at 926). Since the "good faith" settlement determination by the Court releases the settling parties from further contribution to the non-settling parties pursuant

4

to NRS 17.245(1)(b), "the approving court must use its discretion to consider the fairness and overall appropriateness of the proposed settlement." *Duk*, 320 F.3d at 1060–61 (citing *Velsicol Chem. Corp.*, 811 P.2d at 563).

B. <u>Application of the Law to the Facts</u>

Upon analysis of the totality of the facts in this case, the Court finds the $50,000 settlement by Hi-Tech is in good faith. Hi-Tech takes no position on the allocation of these proceeds, and the Plaintiffs have reached agreement regarding distribution of the $50,000. ECF Nos. 174 and 177. Hi-Tech is no longer a going concern. The company was formally dissolved in May 2019, *see https://esos.nv.gov/EntitySearch/BusinessFilingHistoryOnline*, and Mr. Roseberry is stated to have no substantial assets other than the Hi-Tech policy that covers him. Nothing to the contrary was offered. While the policy limits here are far in excess of the amount being paid, "[a] settlement is in good faith so long as it is not disproportionately lower than the settling defendant's fair share of damages." *Prado-Guajardo v. Perez*, Case No. 2:16-cv-00546, 2017 WL 3951647, at *3 (D. Nev. September 8, 2017) (citation omitted). Further, when potential liability is small in comparison to other defendants, the fact that the settling defendant has the capacity to pay more or that the plaintiff's request is still substantial does not necessarily preclude settlement. *See id*. citing *Bay Dev. Ltd. v. Superior Court*, 791 P.2d 290, 299 (Cal. 1990). As explained by the Nevada Supreme Court, "[u]nder such an analysis, a settling defendant would not be required to pay the full amount of its potential liability, as such a requirement would unduly discourage settlements." *Otak Nevada, L.L.C. v. Eighth Jud. Dist. Ct.*, 312 P.2d 491, 496 (Nev. 2013) (citation omitted). The court in *Otak* also reiterated that Nevada has "declined to treat insurance policy limits as exclusive criteria in determining whether a settlement is in good faith." *Id*. at 497 (citation omitted).

When the above factors are considered in light of the circumstance of this case, good faith settlement is confirmed. Significantly, Mr. Wyman was (i) electrocuted when working on an arcade machine not owned, maintained or managed by Hi-Tech, (ii) Mr. Wyman was not employed by Hi-Tech, (iii) Mr. Wyman may have been impaired at the time of the accident, (iv) Mr. Wyman was non-responsive when Hi-tech arrived at the accident site and a Hi-Tech supervisor was electrocuted when she attempted to remove Mr. Wyman from the machine, (v) Hi-Tech immediately called 911

5

and guided firefighters to the site of the accident upon arrival, and, (vi) most importantly, as admitted by Smart Industries, there is no evidence that had Hi-Tech cut the power to the machine after it arrived, the outcome for Mr. Wyman would have been different.

That Hi-Tech may be motivated to buy peace as well as "eliminating indemnity and contribution claims . . . is not evidence of collusion" or bad faith. *Prado-Guajardo*, 2017 WL 3951547, at 4 (citation omitted); *Otak*, 312 P.2d at 497 ("[a] settlement is not considered made in bad faith simply because its purpose is to eliminate third-party liability"). Moreover, Smart Industries' argument that it "would be prejudiced by a determination of good faith because" approving the settlement could "leave Smart with an unproportioned obligation to pay for a sizeable award resulting from a wrongful death claim" is true in virtually every high-damages case in which one defendant reaches settlement while others do not. This potential outcome cannot overcome the overall choice by Nevada to encourage settlement "by discharging all liability for contribution by a settling tortfeasor to others upon a finding that the settlement was entered in good faith." *Kerr*, 211 F.R.D. at 631–32.

With respect to Smart Industries' argument "that a jury could surmise" that Mr. Wyman "might have lived longer" had power been shut off to the machine on which Mr. Wyman was working when electrocuted and, therefore, CPR performed sooner, this is a statement by counsel with nothing offered in support of the proposition. *See Carrillo–Gonzalez v. INS,* 353 F.3d 1077, 1079 (9th Cir.2003) (arguments of counsel are not evidence); *Smith v. Mack Trucks,* 505 F.2d 1248, 1249 (9th Cir.1974) (per curiam) (arguments and statements of counsel are not evidence and do not create issues of material fact capable of defeating an otherwise valid motion for summary judgment). Smart admits there is no expert retained who will offer this opinion, and Smart does not explain how this information would get before a jury.

The Court also finds that a reasonable inference of Hi-Tech liability is not properly gleaned from the facts that trained firefighter professionals were able to perform "*advanced* cardiac life support" resulting in "minimal cardiac activity while transporting" Mr. Wyman, as argued by Smart Industries. ECF No. 176 at 8 (emphasis added). In fact, evidence provided by Hi-Tech shows that

Mr. Wyman exhibited no physical movement at all for approximately two minutes before Hi-Tech's security officer, Mr. Roseberry, arrived at the accident. ECF No. 174 at 4, Ex. 1. Smart does not respond (or object) to this evidence.

The totality of the facts, when applied to the factors established in *In re MGM Grand Hotel Fire Litg.*, and "the fairness and overall appropriateness of the proposed settlement,"[4] lead the Court to conclude the settlement offered by Hi-Tech and accepted by the Plaintiffs is in good faith.

**III. <u>Conclusion</u>**

Accordingly, IT IS HEREBY ORDERED that Hi-Tech Security Inc and William Roseberry's Motion for Determination of Good Faith Settlement (ECF No. 174) is GRANTED.

DATED: February 6, 2020

_____
ELAYNA J. YOUCHAH
UNITED STATES MAGISTRATE JUDGE

---

[4] *Prado-Guarjardo*, 2017 WL 3951647, at \*6.