# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

***

| | |
|---|---|
| WESCO INSURANCE COMPANY as subrogee of its insured NICKELS AND DIMES INCORPORATED, | Case No.: 2:16-cv-01206-JCM-EJY |
| Plaintiff, | **ORDER** |
| v. | |
| SMART INDUSTRIES CORPATION dba SMART INDUSTRIES CORP., MFG., an Iowa corporation, | |
| Defendants. | |
| JENNIFER WYMAN, individually; BEAR WYMAN, a minor, by and through his natural parent JENNIFER WYMAN; JENNIFER WYMAN and VIVIAN SOOF, as Joint Special Administrators of the ESTATE OF CHARLES WYMAN; and SARA RODRIGUEZ, natural parent and guardian ad litem of JACOB WYMAN, | Consolidated with Case No. 2:16-cv-02378-JCM-CWH |
| Plaintiffs, | |
| v. | |
| SMART INDUSTRIES CORPORATION d/b/a SMART INDUSTRIES CORP., MFG, an Iowa corporation; HI-TECH SECURITY INC., a Nevada corporation; WILLIAM ROSEBERRY; BOULEVARD VENTURES, LLC, a Nevada corporation; DOES I through V; DOES 1 through 10; BUSINESS ENTITIES I through V; and ROE CORPORATIONS 11 through 20, inclusive, | |
| Defendants. | |

Before the Court is Defendant Smart Industries Corporation's Motion to Strike [the] Wyman Plaintiffs' Fourth Disclosure of Documents and Witnesses. ECF No. 156. The Court has considered the Motion, Defendant Smart Industries Errata to the Motion to Strike (ECF No. 159), Plaintiffs Sara Rodriguez and Jacob Wyman's Joinder to the Wyman Plaintiffs' Brief Regarding Further Discovery (ECF No. 160, which prompted Smart Industries instant Motion), Plaintiffs Jennifer Wyman, Bear

1

Wyman, and the Estate of Charles Wyman's Opposition to Smart Industries' Motion to Strike (ECF No. 161), Plaintiffs Sara Rodriguez and Jacob Wyman's Joinder to the Wyman Plaintiffs' Opposition to Defendant Smart Industries Motion to Strike (ECF No. 164), and Defendant Smart industries Corporation's Reply in Support of its Motion to Strike Plaintiffs' Fourth Disclosure of Documents and Witnesses (ECF No. 173).[1] The Court has considered each of these filings and finds as follows.

**I.    BACKGROUND**

    A.    <u>Relevant Case History</u>.

This case commenced on May 31, 2016, with removal by Smart Industries Corporation ("Smart" or "Smart Industries") of the case filed by Wesco Insurance Company ("Wesco") as Subrogee of its Insured Nickels and Dimes Incorporated against Smart. ECF No. 1. The discovery deadline was set in the originally removed case for March 27, 2017. ECF No. 14. There were then three extensions of discovery filed by Smart and Wesco before a Motion to Consolidate cases was filed by Smart Industries on April 14, 2017 (ECF No.19).

The Motion to Consolidate was granted (ECF No. 32) on July 17, 2017, as amended on August 4, 2018 (ECF No. 33). This consolidation added Jennifer Wyman, Bear Wyman and the Estate of Charles Wyman as Plaintiffs to this action, and Hi-Tech Security Inc, William Roseberry, and Boulevard Ventures, LLC as Defendants. Various Motions for Summary Judgment were then filed (ECF Nos. 37, 38, and 40) with joinders thereto, all of which were denied in July 2018. ECF Nos. 52 and 53. The parties participated in a settlement conference in October 2018, but were unable to reach resolution. ECF No. 60.

The parties then entered into six stipulations extending the due date for the pretrial order (ECF Nos. 62, 64, 67, 79, 72, and 74), with the last granted on May 2, 2019. ECF No. 76. Less than two weeks later, on May 14, 2019, Defendant Hi-Tech Security Inc and William Roseberry (collectively, "Hi-Tech") filed a Motion for Leave to File a Third-Party Complaint for Contractual Indemnity against Nickels and Dimes. ECF No. 77. On that same day, Hi-Tech filed a Motion for Joinder of Jacob Wyman as a Compulsory Plaintiff or, in the alternative, Motion for Leave to File

---

[1]    Because Plaintiffs Sara Rodriguez and Jacob Wyman join in the Wyman Plaintiffs' Opposition, as well as in the Wyman Plaintiffs' Fourth Supplemental Disclosure (ECF Nos. 160 and 164), the Court references to "Plaintiffs" includes all Plaintiffs in this action.

Third Party Complaint against Jacob Wyman. ECF No. 78. A motion to stay the due date for the pretrial order was then filed (ECF No. 79); the Motion for Leave to File a Third Party Complaint was granted on June 21, 2019 (ECF No. 116); and, the Motion for Joinder was addressed in a Stipulation and Order to Join Sara Rodriguez as Parent and Guardian ad Litem of Jacob Wyman as a plaintiff. ECF No. 128 filed on August 5, 2008. Jacob Wyman was added as a Plaintiff on August 16, 2008 (ECF No. 130).

On September 17, 2019, the Court addressed ECF Nos. 136, 137, 138, 139, 140, 143, and 145, all of which pertained to the scope and timing of additional discovery in the case. ECF No. 149. Because Nickels and Dimes was a brand new party to the proceedings, the Court allowed Nickels and Dimes to engage in expert discovery, which all other parties were allowed to rebut, and otherwise ordered that, on or before October 17, 2019, the parties to, *inter alia*, either present agreement regarding additional discovery or file motions regarding the specific scope of additional discovery to which Nickels and Dimes should be entitled. *Id*.

On October 17, 2019, Plaintiffs Jennifer Wyman, Bear Wyman, and the Estate of Charles Wyman filed its Brief Regarding Further Discovery Issues. ECF No. 153. To that filing, the Wyman Plaintiffs attached their Fourth Disclosure of Documents and Witnesses (the "Fourth Supplement" or "Fourth Supplemental Disclosure"), which was served on all other parties on August 27, 2019. Smart Industries filed its Motion to Strike Wyman Plaintiffs' Fourth Supplemental Disclosure on the same day. ECF No. 156. This is the Motion that is before the Court.

Smart Industries states that the initial expert disclosure deadline for the Wyman Plaintiffs and other parties, except as the Court later allowed for Nickels and Dimes, expired on June 2, 2017, before consolidation, and was never extended thereafter. *Id*. at 2 A review of the dockets show this to be true. Otherwise, discovery closed in this case on October 2, 2017. ECF No. 30; ECF No. 161 at 5. The only extension discussed thereafter pertained to Nickels and Dimes because of its belated addition as a third party defendant. ECF No. 149. However, since the Court's Order regarding Defendant Hi-Tech's good faith settlement with Plaintiffs, it is likely Nickels and Dimes will be dismissed from this action shortly and, therefore, moot the issue of additional discovery. ECF Nos. 187 and 188.

3

B. <u>Fact Relevant to Smart Industries' Motion to Strike</u>.

In response to Smart Industries' Motion to Strike, Plaintiffs contend that "none of the witnesses, documents, and damages calculations identified" in their Fourth Supplemental Disclosure are "new." ECF No. 161 at 3. They further state that "[e]very single document and witness was previously disclosed either through Wesco Insurance, Smart Industries, directly through the Wymans, or through an expert disclosure . . ." *Id*. Plaintiffs further contend the changes in the disclosure were "cosmetic . . . such as identifying with greater specificity persons most knowledgeable for medical providers." *Id*. Plaintiffs direct the Court to their Third Supplement to Initial Disclosures (ECF No. 153-6) (the "Third Supplement"), which was served on October 2, 2017, and their Fourth Supplemental Disclosures served on August 27, 2019 (ECF No. 153-5) in support of their "cosmetic" argument. ECF No. 161 at 7. A comparison between these two documents does not confirm Plaintiffs' assertion.

Plaintiffs have added seventeen custodians of record to their witness list (ECF No. 153-5), including the custodians of record for Smart Industries, Hi-Tech Security, Inc., Boulevard Ventures, LLC, Sansone Companies, LLC, Clark County Coroner/Medical Examiner, Department of Business and Industry, Nickels and Dimes, Consolidated Electrical Distributors, Component Suppliers, MedicWest, Sunrise Hospital, Affordable Cremation & Burial Services, Nevada Neurosciences Institute, Radiology Specialists, United Critical Care, the Clark County Fire Department, and Jerry Andres, LMFT, LISAC. No custodians of record were listed in the "Witnesses" portion of Plaintiffs' Third Supplement.

In addition to these seventeen witnesses, Plaintiffs added Lisa Gavin, M.D. under the Clark County Coroner/Medical Examiner, and Sara Rodriguez as parent and guardian of Jacob Wyman, together with a brand new list of "Decedent's Healthcare Providers." These healthcare providers include:

- Treating Physicians and/or Treating Nurses, Brian Clear, EMT, Eddie Castillo, EMT, and Jordon Fox, EMT at MedicWest Ambulances;
- Treating Physicians and/or Treating Nurses Julie Rivas, M.D., Stephen Tam, M.D., Chad Goffstein, M.D., Richard Byrd, M.D., and Prashant Gundre, M.D. at Sunrise Hospital;

4

- Treating Physicians and/or Treating Nurses, and/or Person Most Knowledgeable at Affordable Cremation & Burial Services;
- Treating Physicians and/or Treating Nurses, and/or Person Most Knowledgeable, and Samir Bangalore, M.D., at Nevada Neurosciences Institute;
- Treating Physicians and/or Treating Nurses, and/or the Person Most Knowledgeable, Kelly Gardner, M.D., David Gorczyca, M.D., Raisa Levy, M.D., Wayne Jacobs, M.D., and Lindsay Blake, M.D. at Radiology Specialists;
- Treating Physicians and/or Treating Nurses, and/or the Person Most Knowledgeable, and Prashant Gundre, M.D., at United Critical Care;
- Treating Physicians and/or Treating Nurses, and/or the Person Most Knowledgeable at the Clark County Fire Department; and,
- Treating Physicians and/or Treating Nurses, and/or the Person Most Knowledgeable at Jerry Andrews, LMFT, LISAC.

Plaintiffs' Fourth Supplement also adds 777 pages of documents including 40 pages of Plaintiff Jennifer Wyman's tax returns, and 737 pages of medical records and billing documents from MedicWest, Radiology Specialist, Sunrise Hospital, and United Critical Care. Plaintiffs further add a surveillance video that was previously produced by Boulevard Ventures.

Next, Plaintiffs' Fourth Supplement identifies x-rays and CT brain scans of Decedent in their possession that are available for inspection and copying at defendants' expense, which were not previously made available. Finally, Plaintiffs' Fourth Supplement includes a computation of damages as follows:

- $1,508.17 charged by Affordable Cremation & Burial;
- $486.00 charged by Radiology Specialist;
- $172,154.00 charged by Sunrise Hospital;
- $3,320.00 charged by United Critical Care; and,
- Loss of Household Services, "$TBD."

Plaintiffs contends that Sara Rodriguez is the "only entirely new witness," attempting to distinguish her from the "new" witnesses included in the "Decedent's Healthcare Providers" list.

ECF No. 161 at 7. Plaintiffs also argue that "[a]ll parties have known about these witnesses for an extremely long time," and then offer that "rather than merely identify[ing] 'Person(s) Most Knowledgeable' for MedicWest Ambulance, Plaintiffs actually identifies three (3) different EMTs who appear in the Decedent's medical records as most likely being the 'Person Most Knowledgeable.'" *Id.* at 7-8. Plaintiffs say they are "clarifying" who may appear as the actual Person(s) Most Knowledgeable for the previously listed entity. *Id*. at 8. Plaintiffs repeat this argument for Sunrise Hospital and "the remaining witnesses identified by Plaintiffs in the 4th supplement." *Id*.

Plaintiffs admits they have added Affordable Cremation & Burial, but contend this entity was listed by Wesco and Smart in their Rule 26 disclosures. Plaintiffs return to the "clarification" contention stating this is all they are doing "via the addition of (1) Nevada Neurosciences Institute, (2) Radiology Specialists, (3) United Critical Care, and (4) the Clark County Fire Department." *Id*. at 8-9. Plaintiffs state that Nevada Neurosciences Institute records were "contained" in Wesco's Second Supplement and Smart's First Supplement "in the Sunrise Hospital Medical Records." *Id*. at 9. With respect to Radiology Specialists, the Clark County Fire Department, and United Critical Care these are supposedly "not 'new'" because "they were disclosed in the exact same manner under the exact same circumstances as Nevada Neurosciences Institute"; and, that Jerry Adams was made known to all parties by virtue of Jennifer Wyman's responses to interrogatories. *Id*. at 9-10.

With respect to the documents, Plaintiffs contend that, "with a few notable exceptions" all were previously disclosed by Wesco or Smart and are only being "cross identified by Plaintiffs" pursuant to their incorporation of "any document or tangible item" disclosed by any other party or third party to this dispute. *Id*. at 10. Finally, Plaintiffs say Jennifer Wyman's tax returns were disclosed as part of an expert report. *Id*. at 10-11.

Smart Industries argues that until the Fourth Supplemental Disclosure, the Plaintiffs did not include a computation of damages. ECF No. 173 at 2. In fact, a review of the Wyman Plaintiffs' Third Supplement shows that the $1,508.17 charged by Affordable Cremation & Burial, $486.00 charged by Radiology Specialist, $3,320.00 charged by United Critical Care, and Loss of Household Services "$TBD" were not listed. ECF No. 153-6 at 10-11. Sunrise Hospital is listed in the Third

6

Supplement, but the amount is shown as to be determined.  *Compare* ECF No. 153-6 at 10 to 153-5 at 19.  Smart also points out that Plaintiffs just provided "a July 11, 2017 reassignment agreement purporting to assign Wesco's interests to" Plaintiffs.  Smart states there is no stipulation among the parties agreeing to reopen discovery or allow supplementation and, as previously stated, the Court only addressed the potential need for additional discovery as it pertained to the newly added third-party defendant Nickels and Dimes.  ECF No. 149.

II.     **LEGAL STANDARDS**

     A.     <u>Rule 26 Disclosures and Supplementation</u>.

Well settled law established that Federal Rule of Civil Procedure 26(a)(1)(A) requires all parties to a dispute to provide initial disclosures to the opposing parties without waiting for discovery requests.  For those parties claiming damages, these disclosures must include a computation of each category of damages claimed by the disclosing party.  Fed. R. Civ. P. 26(a)(1)(A)(iii).  The purpose of the initial disclosure requirements includes putting parties on notice of the factual and legal contentions of the opposing party (*Ollier v. Sweetwater Union High School Dist.*, 768 F.3d 843, 862-62 (9th Cir. 2014)), as well as accelerating the exchange of information and assisting parties in focusing and prioritizing their organization of discovery.  *R&R Sails, Inc. v. Insurance Co. of Penn.*, 673 F.3d 1240, 1246 (9th Cir. 2012).  Courts must enforce these disclosure requirements, but must do so using "common sense" keeping in mind the purpose that the Rules are intended to accomplish.  *Jackson v. United Artists Theatre Circuit, Inc.*, 278 F.R.D. 586, 592 (D. Nev. 2011).

Rule 26(e)(1) requires parties making initial disclosures to supplement or correct disclosures in a timely manner "if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and that the additional or corrective information has not otherwise been known to the other parties during the discovery process or in writing."  Fed. R. Civ. P. 26(e)(1).  The requirement to supplement is a duty, not a right.  *Luke v. Family Care & Urgent Med. Clinics*, 323 Fed. App'x 496, 500 (9th Cir. 2009).  Given, however, that there is no specific rule regarding the timing of supplementation, the Court's inquiry is whether the timing is reasonable based on when the information was available to the party.  *Silvagni v. Wal-Mart Stores, Inc.*, 320. F.R.D. 237, 241 (D. Nev. 2017).

7

B. <u>Computation of Damages</u>.

With respect to the computation of damages, this need not "be detailed early in the case before all relevant documents or evidence has been obtained by the plaintiff." *LT Game Int'l Ltd. v. Shuffle Master, Inc.*, 2013 WL 321659, *6 (D. Nev. Jan. 28, 2013)). Generally, the initial damages computation is viewed as a preliminary assessment that is subject to revision. *City County of san Francisco v. Tutor-Saliba*, 218 F.R.D. 219, 222 (N.D. Cal. 2003). However, as a case progresses, a party claiming damages has a duty to diligently obtain the necessary information and provide updated damage computations within the discovery period. *Jackson*, 278 F.R.D. at 593. The Rules do provide flexibility in both the initial computation and in supplementing the disclosures as the case progresses; however, courts are more likely to exclude damages evidence when a party first discloses its computation of damages shortly before trial or substantially after discovery has closed. *Silvagni*, 320 F.R.D. at 241; *CQ Inc. v. TXU Mining Company,* 565 F.3d 268 (5th Cir.2009); *24/7 Records v. Sony Music Entertainment,* 566 F.Supp.2d 305, 318 (S.D.N.Y.2008).

C. <u>Sanctions for Failing to Comply with Disclosure Requirements</u>.

When a party believes its opponent has failed to timely comply with the requirements of disclosure, that party may move for sanctions under Rule 37(c). Rule 37 "gives teeth" to the disclosure requirements of Rule 26(e). *Yeti by Molly, Ltd. V. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001). The moving party bears the initial burden of establishing that the opposing party failed to comply with the disclosure requirements. *Silvgani*, 320 F.R.D. at 241-242. If the movant satisfies its burden, the Court may exercise its discretion to determine whether the failure to comply with the initial disclosure requirements was either substantially justified or harmless. *Id.*; *see also* Fed. R. Civ. P. 37(c)(1) ("[i]f a party fails to provide information ... as required by 26(a) or (e), the party is not allowed to use that information ... at a trial, unless the failure was substantially justified or is harmless). The burden to demonstrate substantial justification or harmlessness belongs to the non-moving party. *Id.* District courts are entrusted with wide latitude when exercising their discretion to impose Rule 37(c) sanctions. *Yeti by Molly, Ltd.*, 259 F.3d at 1106.

When deciding whether to impose sanctions to exclude disclosures, the Court considers various factors including (1) the public's interest in expeditious resolution of litigation, (2) the Court's need to manage its docket, (3) the risk of prejudice to the other parties, (4) the public policy favoring disposition of cases on their merits, and (5) the availability of less drastic sanctions. *Lanard Toys Ltd. v. Novelty, Inc.*, 375 F. App'x 705, 713 (9th Cir. 2010). When an exclusion sanction is equivalent to dismissing a claim, the court must also consider whether the non-compliance involved willfulness, fault, or bad faith. *R&R Sails, Inc.*, 673 F.3d at 1247. Nonetheless, a finding of willfulness, fault, or bad faith is not required, although it may be a factor in deciding what level of sanctions to impose. *Jackson*, 278 F.R.D. at 594.

Despite the above, well settled law does not require evidence exclusion even it substantial justification or harmlessness is found. *Id.* Rule 37(c) permits the Court to impose other sanctions in addition to or instead of exclusion sanctions including, for example, payment of attorneys' fees and costs or informing the jury of the party's failure. Fed. R. Civ. P. 37(c)(1)(A)-(C). Because exclusion is a harsh sanction, it should be imposed only in rare instances. *Silvgani*, 320 F.R.D. at 243.

Ultimately, parties have a duty to work together and cooperate toward the just, speedy, and inexpensive resolution of litigation. *See* Fed. R. Civ. P. 1. The disclosure rules, and motions for sanctions, are not to be viewed as procedural weapons for litigants to gain a tactical advantage. *Silvgani*, 320 F.R.D. at 243. Counsel should seek to work out agreements that will reasonably permit them to respond to evidence and defend claims on the merits rather than resort to motions for exclusion. *Jones v. Wal-Mart Stores, Inc.*, Case No. 15-cv-1454, 2016 WL 1248707, at *7 (D. Nev. March 18, 2016).

**III. ANALYSIS**

    A. <u>Additional Witnesses</u>.

When counted in total, Plaintiffs add 23 new names to their witness list, excluding custodians of record. They did so approximately two years after discovery closed and long after the names of these individuals were apparently available through documentation. Plaintiffs claim that many of the names are not "new" or "entirely new," but the Court is not privy to the documents in which

these names appeared and, more importantly, the mere appearance of names in documents does not necessarily meet the requirements of Rule 26(a). *Benjamin v. B & H Educ., Inc.*, 817 F.3d 1139, 1150 (9th Cir. 2017). Plaintiffs also claims that many of the names are offered to illuminate who may be the person or persons most knowledgeable of entities, only some of which were previously disclosed by Plaintiffs. In sum, Plaintiffs argue that their Fourth Supplemental Disclosure, adding numerous witnesses, was harmless because they "have been known" to Smart Industries. Plaintiffs say that if Smart has an opportunity to depose these witnesses, that too demonstrates harmlessness. However, Plaintiffs do not explain why, given that all of the witnesses were supposedly known for so long, they were not included in any of Plaintiffs' disclosures before the discovery cut off, let alone until almost two years after the discovery period closed. Plaintiffs do not address how many additional depositions might be needed, the delay this would cause, or how this delay would affect the status of the case. If this were a single expert witness, who offered a supplemental report based upon the same assumptions and methodology as presented in an original report, as was true in *Liguori v. Hansen*, 752 Fed. Appx. 389, 392 (9th Cir. 2018) on which Plaintiffs rely, the Court might agree with Plaintiffs, but that is not the case here.

Nevertheless, Plaintiffs contends Affordable Cremation & Burial was listed by Wesco and Smart in their Rule 26 disclosures. The Court accepts this representation and allows this addition to Plaintiffs witness disclosures for purposes of listing a Person Most Knowledgeable only. The Court also finds that Samir Bangalore, M.D. was previously disclosed, together with an "and/or Person Most Knowledgeable" for Sunrise Hospital, in the Wyman Plaintiffs First Supplement to Initial Disclosures (ECF No. 173 at 21 of 42) and, therefore, Dr. Bangalore is not stuck from Plaintiffs' belated Fourth Supplement.

The Court also agrees that Sara Rodriguez, as parent and guardian for Jacob Wyman, was just recently added to the case. Hence, disclosure of Ms. Rodriguez is not untimely. Likewise, the identification of Lisa Gavin, M.D., to the extent her name is provided because she is the Person Most Knowledgeable for the Clark County Coroner/Medical Examiner, this disclosure is not

inappropriate. The Person Most Knowledgeable for the Clark County Fire Department was also clearly previously disclosed by Plaintiffs and, therefore, is not a new witness. These witnesses are not struck.

With respect to Jerry Andrews, who is listed as a Licensed Marriage and Family Therapist ("LMFT") and Licensed Independent Substance Abuse Counselor ("LISAC"), Plaintiff Jennifer Wyman did not merely mention this therapist's name in the course of discovery. Rather, she responded to an interrogatory requesting information regarding treatment for psychological or emotional distress following her husband's death by stating that she saw Mr. Andrews for anxiety and depression, gave his full address, and stated that she deferred to medical providers to opine on the nature, extent, and permanence of her conditions. ECF No. 161 at 10, citing Ex. 7. This response was provided to Smart Industries on September 15, 2017, giving Smart time to obtain records and a deposition from this individual. *See KST Data, Inc. v. Northrup Grumman Systems Corporation*, Case No. SV 17-5125, 2019 WL 6622854, at *4 (C.D. Cal. August 30, 2019) (distinguishing *Benjamin*, 877 F.3d at 1150 (9th Cir. 2017)). Hence, Jerry Andrews is not struck as a fact witness.

However, the Court finds that the public's interest in expeditious resolution of litigation is not served by allowing the addition of all the remaining "new" or "entirely new" witnesses disclosed by Plaintiffs. Motions in Limine have already been filed and a trial date should be set soon. At a minimum, if all these witnesses are allowed, discovery would certainly need to be reopened for a substantial time period to allow Smart Industries an opportunity to gather additional information.

Thus, and given that Plaintiffs previously listed the Person(s) Most Knowledgeable for MedicWest Ambulance and Sunrise Hospital as witnesses, and that the individuals now named are offered solely for "clarification" of who such witnesses may be, the risk of prejudice to Plaintiffs by striking the individuals named under these entities will be minimal and will not affect disposition of the case on the merits. For this reason Brian Clear, EMT, Eddie Castillo, EMT, and Jordon Fox, EMT at MedicWest Ambulances, and Julie Rivas, M.D., Stephen Tam, M.D., Chad Goffstein, M.D., Richard Byrd, M.D., and Prashant Gundre, M.D. at Sunrise Hospital, are struck by the Court.

Further, Smart Industries is correct that Plaintiffs fail, even to this date, to identify any additional witnesses as non-retained experts pursuant to Fed. R. Civ. P. 26(a)(2)(C). Plaintiffs offer

no explanation for this failure. In fact, they do not respond to this assertion by Smart Industries. For this reason, Plaintiffs shall not be entitled to offer any witness who is not struck as a non-retained expert. These witnesses may testify to facts, but shall not be entitled to offer opinions pursuant to Fed. R. Evid. 702, 703 or 705.

With respect to the disclosure of seventeen custodians of record, and the treating physicians and/or treating nurses and/or persons most knowledgeable for Nevada Neurosciences Institute, Radiology Specialists, and United Critical Care, the Court can neither grant nor deny these additions based on the information provided by the parties. For the same reason, the Court cannot grant or deny the addition of treating physicians and/or treating nurses for the Clark County Fire Department or Affordable Cremation & Burial. While both parties argue that some of these unidentified individuals were known, it is unclear if those listed were ever identified by any party as potential witnesses or to whom Smart actually objects. Therefore, a decision regarding these Plaintiffs' proposed addition will be the subject of a hearing, the date and time for which is set below.

B.     Additional Documents.

Smart Industries' moving papers asks the Court to strike only those documents from the 777 pages of medical and billing records, x-rays and CT scans of decedent, tax returns, and surveillance video "[t]o the extent that no other party timely disclosed these documents." ECF No. 156 at 8. Plaintiff says many of these documents were previously produced by Wesco and/or Smart during the discovery period. ECF No. 161 at 10. Neither party identifies exactly which documents were disclosed and which documents were not. Without this information, the Court cannot judge either prejudice or harmlessness. In sum, neither party has met its burden. A decision regarding what Smart seeks to strike and what Plaintiffs contends has been disclosed will be the subject of a hearing, the date and time for which is set below.

C.     Plaintiffs' Computation of Damages.

Plaintiffs tell the Court that the damages included in their Fourth Supplement, not specifically listed in their Third Supplement (served in October 2017), were identified as "Amount to be determined." ECF NO. 161 at 19. A review of this disclosure shows this to be true with respect to the amounts for Sunrise Hospital and funeral expenses. *Compare* ECF No. 153-6 at 10 *to* 153-5 at

12

19. However, Plaintiff do not explain why these amounts could not have been disclosed at some time prior to August 2019 except to say that they "potentially did not have the right to recover under Arizona law."

Plaintiffs argue that "Arizona law, . . . provides for an assignment of wrongful death claims to a worker's compensation insurance carrier if the heirs of the decedent do not institute an action within one year." *Id*. at 20. Here, the Wyman Plaintiffs did not bring a claim within one year of Charles Wyman's death and Wesco, the worker's compensation insurance carrier, did so when it filed a claim against Smart Industries on May 16, 2016, in state court. ECF No. 1. Wesco then "reassigned whatever rights . . .[it] … had to the Plaintiffs on July 11, 2017 via an assignment agreement with the Plaintiffs." ECF No. 161, Ex. 8. Thus, while Wesco exercised a right to pursue a claim for reimbursement against Smart, it is also true that Wesco reassigned that right to Plaintiffs approximately two years before Plaintiffs served their Fourth Supplemental Disclosure that includes additional damages calculation. This is not "seasonable" as Plaintiffs claim. ECF No. 161 at 21.

Smart Industries points out that Plaintiffs did not disclose the reassignment agreement until it filed its Response to Smart's Motion to Strike on October 31, 2019, to which they attached the agreement as Exhibit 8. Plaintiffs do not even attempt to explain this belated disclosure. And, Plaintiffs do not mention Smart's August 2, 2017 Interrogatory No. 15 (seeking information "about 'any monetary damages' … include[]ing the 'category of loss or expenses and … the amount in dollars and cents corresponding to each category'") in their response. ECF No. 161 *and see* ECF No. 173 at 5. This fact is important because it demonstrates that Plaintiffs' Fourth Supplement was not a correction of an error. *Compare* dates of ECF No. 161, Ex. 8 *and* ECF No. 153-5.

As to the choice of law (that is, whether Arizona law applied to the issue of Plaintiffs recovery and assignment from Wesco) as a basis for the delayed supplemental computation of damages, Plaintiffs have not raised that issue in a motion presented to the Court as of the date of this Order. Plaintiffs admit that this is because "[t]his particular matter … was resolved via the assignment … from Wesco … on July 11, 2017." ECF No. 161 at 23.[2]

---

[2] Plaintiffs present no legal argument regarding why Arizona law would not apply or how, if Nevada law applies, the reassignment by Wesco to Plaintiffs of its rights to pursue damages against Smart was somehow unsettled after July 11, 2017. And, the Court finds no law that would support such a contention.

13

Plaintiffs also seek to justify the delayed disclosure by arguing that (i) "Plaintiffs need not supplement 'as each new item of information is learned,'" (ii) they supplemented promptly "as the trial date approached," (iii) Smart did not object to Wesco's disclosure or complaint in subrogation, and (iv) Smart is aware of what Wesco paid. These arguments fail to demonstrate harmlessness. As explained in *R & R Sails*, on which Plaintiffs' rely, a disclosure including approximate damages, which are not supplemented "after it became evident that the initial disclosures [and, in this case, supplemental disclosures] were incomplete" are not cured by a disclosure "as the trial date approaches[]." 673 F.3d at 1246-47. When information is available before the close of discovery or, as is true in this case, long before a disclosure is made, the fact that the disclosure is ultimately made does not cure untimeliness or demonstrate harmlessness. *Tracey v. American Family Mut. Ins. Co.*, Case No. 2:09-cv-1257, 2010 WL 2785348, at * 7 (D. Nev. Sept. 14, 2010) ("documents were available to Plaintiff, or at least within Plaintiff's grasp, before the end of discovery. … [T]he duty to supplement is not an opportunity to add to information which should have been disclosed" before the close of discovery "in accordance with F.R.C.P. 26(a) and (e)).

In 2015, the U.S. District Court for the District of Nevada decided *Montilla v. Walmart Stores, Inc.*, Case No. 2:13-cv-2348, 2015 WL 5458781 (D. Nev. September 16, 2015). In that case the court stated: "Initial disclosures function as a form of notice pleadings; they merely require a party to include "a computation of each category of damages claims by the disclosing party." *Id*. at *3 (citations and emphasis omitted). When a party fails to supplement her disclosures until after the disclosure deadline expires, it may prevent the opposing party from properly preparing for trial or making an informed decision about settlement. *Id*. (citations omitted). That Smart did not object to Wesco's filing is irrelevant to Plaintiffs' duty to supplement their damages calculation pursuant to Rule 26 as well as in response to Smart's Interrogatories. Reopening discovery for purposes of allowing Smart to do additional discovery is also no cure as Plaintiffs failed to supplement their responses at any time and, as Smart states, reopening discovery three years after this case commenced and two years after the close of discovery is not harmless.

With respect to Plaintiffs argument that Smart is "aware" of the amount Wesco paid, and conducted discovery on that point, does not necessarily justify Plaintiffs' failure. Specifically, Smart

admits it deposed a Wesco claims examiner and learned that hospital charges of approximately $168,000 were reduced to $31,712.07. ECF No. 156 at 10. But, this deposition presupposed Wesco held the claim against Smart. It was not until October 2019 that the Wyman Plaintiffs disclosed themselves as a recipient of reassignment from Wesco. ECF No. 161, Ex. 8. The Court cannot agree that the belated disclosure of the reassignment agreement was justified or harmless.

Smart argues that if Plaintiffs are allowed to pursue Sunrise Hospital damages, those damages should be limited to $31,712.07. A.R.S. § 23-1023(D) states, in pertinent part, that "[i]f the employee proceeds against the other person, compensation and medical, surgical and hospital benefits shall be paid as provided in this chapter and the insurance carrier or other person liable to pay the claim shall have a lien on the amount actually collectable from the other person to the extent of such compensation and medical, surgical and hospital benefits paid. . . . The amount actually collectable shall be the total recovery less the reasonable and necessary expenses, including attorney fees, actually expended in securing the recovery." This provision appears to be intended to ensure that an injured employee or those acting on an injured employee's behalf do not receive a double recover and that the insurance carrier will be reimbursed for the amount it actually paid. *See Pinal County v. Industrial commission of Arizona*, Case No. 1CA-IC15-0041, 2016 WL 1377738, at n.2 (Ariz. Ct. App. April 7, 2016) ("[t]he Arizona Workers' Compensation Act preserves the right of an injured employee to bring a lawsuit against a third party tortfeasor not in the same employ." A.R.S. § 23–1023(A). "The employer/carrier has a statutory lien on any net recovery to the extent of medical expenses and compensation benefits paid. § 23–1023(D)". Nothing in A.R.S. § 23-1023 appears to limit the amount a plaintiff may recover in a separate action against an alleged tortfeasor to the amount an insurer paid on behalf of that plaintiff. The Court found no Arizona law so holding and a search of Nevada law shows it to the contrary. *Tri-County Equip. & Leasing, LLC v. Klinke*, 286 P.3d 593, 360 (Nev. 2012).

A more general search resulted in numerous holdings contrary to Defendant's contention. *See*, *for example*, *Koffman v. Leichtfuss*, 630 N.W.2d 201, 2011 (Wisc. 2001) (rejecting a defendant's argument "the insurers' subrogation rights limit the recoverable medical expense damages to the amounts actually paid" and finding that the "insurers' subrogation interests" do not

have "such an effect"); *Messer v. Anderson*, 446 So.2d 652, 654 (Al. Ct. App. 1984 ("settlement between insurer and insured for a lesser amount before suit against the uninsured motorist, does not limit the amount of recovery by insured in that suit"); *Williams v. Buckelew*, 246 So.2d 58, 68 (La. Ct. App. 1971) ("First of all the liability of a third-party tortfeasor or his liability insurer is not reduced or diminished because of workmen's compensation benefits paid to the plaintiff. They are liable for his full damages (the insurer's liability being limited, of course, to its policy limits")); *see also Ishikawa v. Delta Airlines, Inc.,* 343 F.3d 1129, 1134 (9th Cir.2003) ("[u]nder the collateral source rule, the tortfeasor is not entitled to be relieved of the consequences of its tort by some third party's compensation to the victim"); *Cornell v. Wal-Mart Stores, Inc*., Case No. 3:08-103, 2010 WL 11591395, at *6 (D. Nev. January 26, 2010) ("Nevada courts are likely to follow the Restatement and the majority of the courts to address the issue and hold that evidence of third-party discounted payments are inadmissible under the collateral source rule"). Thus, the Court rejects Smart's position that, if the charges by Sunrise Hospital are admissible for purposes of proving damages, Plaintiffs are limited to collection of $31,712.07. This, however, works against Plaintiffs' argument of harmlessness because Smart was denied a timely opportunity to consider the full amount of damages the Wyman Plaintiffs seek when making strategic decisions in this case.

D. Smart's Request for Sanction.

Using common sense, while also looking at when the information was available to Plaintiffs, the Court finds no justifiable basis for waiting until August 2019 to include Sunrise Hospital damages in their damages calculation. The Court rejects Plaintiffs claim that Arizona law pertaining to Wesco's right to pursue claims and the reassignment of those claims, which admittedly happened on July 11, 2017, provide the necessary basis to excuse their delayed disclosure. ECF No. 161 at 20-21. Case law holding that "at the time of initial disclosure" a plaintiff must present a calculation based on the information then-available is not the concern here. Smart is not arguing and the Court is not concerned with a disclosure made when this case started or even before July 11, 2017 when Wesco reassigned its rights to pursue damages claims against Smart.

Plaintiffs argument that "Smart takes [sic] no objection to Wesco's disclosure and admits that they are aware of what Wesco paid" does not render the disclosure justified especially given

that Plaintiffs admit their August 2019 supplement was done "with special promptness as the trial date approaches." *Id*. at 23. Plaintiffs do not contend or offer anything to suggest that Smart conducted discovery aimed at Sunrise or Plaintiffs regarding the Sunrise Hospital damages Plaintiffs now seek. That Wesco's deposition was taken does not change this fact. Thus, if these damages are allowed, Smart may and would be entitled to additional discovery that will necessarily delay this case more than it has already been delayed. Plaintiffs failure may not have been in bad faith, but the fact that they were aware of these damages for more than two years before they claimed them certainly strikes at willfulness or at least a dilatory approach to Plaintiffs' obligations.

In sum, applying the factors Plaintiffs asks the Court to apply, as stated in *Lanard Toys Ltd v. Novelty Inc.*, 375 Fed. Appx. 705, at *6 (9th Cir. 2010) (applying this standard to determine whether a discovery deadline violation is justified or harmless), the Court concludes Plaintiffs' delay was not justified. Applying these same factors to harmlessness (as the Court did in *Silvagni*, 320. F.R.D. at 242), the Court comes to the same conclusion.

However, the Court is reminded that even in the absence of justification or harmlessness, it is not required to impose exclusion as a sanction. *Id.* (citations omitted). Here, there is no doubt that Smart knew of the approximate amount charged by Sunrise for care of Decedent by virtue of information disclosed by and a deposition taken of Wesco. ECF No. 173. After weighing all the factors identified in *Silvagni*, the facts and law, on balance, militate against exclusion as an appropriate sanction of the Sunrise Hospital damages. *Id*. (citations omitted). Less drastic sanctions exist here.

The Court therefore finds that requiring Plaintiffs to pay the fees and costs associated with Smart's Motion to Strike, while also reopening discovery for the sole purpose of allowing Smart to take certain depositions regarding the Sunrise Hospital damages, if so desired, is appropriate. The same analysis is not true for Radiology Specialists and United Critical Care. The damages claim for these healthcare providers will be struck. The damages alleged for the "Loss of Household Services '$TBD'" are also struck. These categories of damages were not disclosed in Plaintiffs' Third Supplemental Disclosure. ECF No. 153-6 at 10.

In sum, while Plaintiffs' inexcusable delay in clearly identifying the amount of Sunrise Hospital medical charges as an amount Plaintiffs would seek as damages cannot be justified, the fact that these damages are not a surprise to Smart, Smart has done some discovery on the issue, that the parties recently agreed to an extension of time to February 25, 2020 for responses to Motions in Limine (ECF No. 194), and, most importantly, that courts strongly disfavor exclusion as a sanction except in the most egregious cases (*Silvagni*, 320 F.R.D. at 242-43), the Court will not exclude this evidence.

**IV.   ORDER**

Based on the foregoing, the Court HEREBY ORDERS that Smart Industries Corporation's Motion to Strike Wyman Plaintiffs' Fourth Disclosure of Documents and Witnesses (ECF No. 156) is GRANTED in part and DENIED in part.

IT IS FURTHER ORDERED that Defendant Smart Industries Motion is granted as follows:

- Plaintiffs' witnesses identified as Brian Clear, EMT, Eddie Castillo EMT, Jacob Fox, EMT, Julie Rivas, M.D., Stephen Tam, M.D., Chad Goffstein, M.D., Richard Byrd, M.D., and Prashant Gundre, M.D. are struck.
- No witnesses disclosed by Plaintiffs shall be entitled to testify as a non-retained expert, including, but not limited to, the new healthcare provider witnesses and Jerry Andrews. Only Plaintiffs' previously and timely disclosed experts shall be entitled to offer opinion testimony pursuant to Fed. R. Evid. 702, 703, or 705.
- Plaintiffs' disclosure of damages arising from Radiology Specialists and United Critical Care are struck.
- Plaintiffs' disclosure of the Loss Household Services "$TBD" are struck.

IT IS FURTHER ORDERED that Defendants Smart Industries Motion is denied as follows: Samir Bangalore, M.D., Sara Rodriguez, as parent and guardian ad litem for Jacob Wyman, the Person(s) most Knowledgeable for Affordable Cremation & Burial and the Clark County Fire Department, and Lisa Gavin, M.D. to the extent she is the Person Most Knowledgeable for the Clark

County Coroner/Medical Examiner, will remain as disclosed on Plaintiffs' Fourth Supplemental Disclosure. Sunrise Hospital damages disclosure will also remain as disclosed on Plaintiffs' Fourth Supplemental Disclosure.

IT IS FURTHER ORDERED that discovery is reopened for a period of 45 days, beginning from the date of this Order, for the sole and exclusive purpose of allowing Smart Industries to depose Sara Rodriguez, Samir Bangalore, M.D. as a fact witness, Jerry Andrews as a fact witness, Lisa Gavin, as a fact witness and Person Most Knowledgeable for the Clark County Coroner/Medical Examiner, and the Person(s) Most Knowledgeable for Sunrise Hospital, Affordable Cremation & Burial, and the Clark County Fire Department.

IT IS FURTHER ORDERED that the Wyman Plaintiffs shall be required to pay the reasonable attorney's fees and costs incurred by Smart Industries for bringing the Motion to Strike, and Reply in Support therefore.

IT IS FURTHER ORDERED that Smart Industries shall, within 14 days of the date of this Order, submit a memorandum, supported by affidavit of counsel, establishing the amount of attorneys' fees and costs incurred as addressed in this Order. The memorandum shall provide a reasonable itemization and description of work performed, identify the attorney(s) or staff member(s) performing the work, the customary fee of the attorney(s) or staff member(s) for such work, and the experience, reputation and ability of the attorney performing the work. The attorney's affidavit shall authenticate the information contained in the memorandum, provide a statement that the bill has been reviewed and edited, and a statement that the fees and costs charged are reasonable.

IT IS FURTHER ORDERED that Defendant shall have five (5) days from service of the memorandum of costs and attorney's fees, in which to file a responsive memorandum addressing the reasonableness of the costs and fees sought, and any equitable considerations deemed appropriate for the Court to consider in determining the amount of costs and fees which should be awarded.

IT IS FURTHER ORDERED that a hearing is set for 3 p.m. on February 25, 2020 in Courtroom 4B to address the disclosure of (i) seventeen custodians of record, (ii) numerous treating nurses and/or treating physicians and/or persons most knowledgeable for Nevada Neurosciences Institute, Radiology Specialists, and United Critical Care, (iii) treating nurses and/or physicians for

the Clark County Fire Department and Affordable Cremation & Burial, and (iv) 777 pages of medical and billing records, x-rays and CT scans of decedent, Jennifer Wyman's tax returns, and the surveillance video.

DATED: February 19, 2020.

_____
ELAYNA J. YOUCHAH
UNITED STATES MAGISTRATE JUDGE