**DAVID BARRON, ESQ.**
Nevada Bar No. 142
**JOSEPH R. MESERVY, ESQ.**
Nevada Bar No. 14088
**BARRON & PRUITT, LLP**
3890 West Ann Road
North Las Vegas, Nevada 89031-4416
Telephone: (702) 870-3940
Facsimile:  (702) 870-3950
Email: DBarron@lvnvlaw.com
Email: JMeservy@lvnvlaw.com
*Attorneys for Defendant,*
*Smart Industries Corporation*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

*****

| | |
|---|---|
| WESCO INSURANCE COMPANY as subrogee of its insured NICKELS AND DIMES INCORPORATED,<br><br>Plaintiff,<br><br>vs.<br><br>SMART INDUSTRIES CORPORATION dba SMART INDUSTRIES CORP., MFG., an Iowa corporation,<br><br>Defendants. | Case No.: 2:16-cv-01206-JCM-CWH<br><br><br><br><br>CONSOLIDATED FOR PURPOSES OF DISCOVERY AND TRIAL |
| JENNIFER WYMAN, individually; BEAR WYMAN, a minor, by and through his natural parent JENNIFER WYMAN; JENNIFER WYMAN and VIVIAN SOOF, as Joint Special Administrators of the ESTATE OF CHARLES WYMAN,<br><br>Plaintiffs,<br><br>vs.<br><br>SMART INDUSTRIES CORPORATION dba SMART INDUSTRIES CORP., MFG.; HI-TECH SECURITY INC; WILLIAM ROSEBERRY; BOULEVARD VENTURES, LLC; SANSONE COMPANIES, LLC; DOES I through V; and BUSINESS ENTITIES I through V, inclusive,<br><br>Defendants. | Case No.: 2:16-cv-02378-RFB-GWF<br><br><br><br>**DEFENDANT SMART INDUSTRIES CORPORATION dba SMART INDUSTRIES CORP., MFG.'S MOTION TO STRIKE TERRENCE CLAURETIE AS AN EXPERT WITNESS** |

///

1

## I. INTRODUCTION

The Wyman and Rodriguez Plaintiffs both designated Terrence Clauretie, an economist, as an expert witness. But, as described below, neither Plaintiff timely disclosed Dr. Clauretie's final report or the facts and data he relied upon in forming his opinions. On June 2, 2017, the Wyman Plaintiffs served their initial expert designation and produced a "*Preliminary* Report on the Loss in Financial Support."[1] A few months later, on August 15, 2017, the Wyman Plaintiffs added a computation of loss of wages and benefits totalling $1,326,589 to their initial disclosures based on the preliminary report.[2] But, prior to the close of discovery, the Wyman Plaintiffs *never produced a final report* by Terrance Clauretie, *nor did they produce any records proving or establishing any facts or data* upon which Dr. Clauretie may have relied in forming an opinion concerning lost wages and benefits.

On October 9, 2018, the Rodriguez Plaintiffs made their initial expert designation, in a state court case that was later removed on stipulation and consolidated, and produced the same *preliminary* report (curiously still addressed to counsel for the Wyman Plaintiffs).[3] To date, the Rodriguez Plaintiffs have *never produced a final report by Terrance Clauretie*, *nor did they timely produce any records proving or establishing any facts or data* upon which Dr. Clauretie may have relied in forming an opinion concerning lost wages and benefits. In fact, the Rodriguez Plaintiffs never even disclosed any computation of loss of wages and benefits in any of their disclosures or any supplements thereto.

No actual income records were produced with Dr. Clauretie's preliminary report; however, he claims in that report to have relied upon "Wage information (w-2's from employment: 2014 to 2015)" in forming his *preliminary* opinion that the Decedent's lost future wages resulted in an

---

[1] Wyman Plaintiffs' Expert Disclosure, **Exhibit A**.
[2] Wyman Plaintiffs' First Supplement to Initial Disclosure Pursuant to FRCP 26(a), **Exhibit B**.
[3] Rodriguez Plaintiffs' Expert Disclosure, **Exhibit C**.

BARRON & PRUITT, LLP
ATTORNEYS AT LAW
3890 WEST ANN ROAD
NORTH LAS VEGAS, NEVADA 89031
TELEPHONE (702) 870-3940
FACSIMILE (702) 870-3950

estimated present-day loss of $1,326,589.[4]  Even so, this Court has determined that Dr. Clauretie "admitted that this report was preliminary, stating that he was '*awaiting income information prior to 2014.*'"  ECF No. 266 at 7:13-23 (italics added); *see also* ECF No. 320, at 5:6-6:5 (denying reconsideration).

Ultimately, "discovery closed in this case on October 2, 2017," ECF No. 199 at 3:23, **but no party produced any such W-2 records**.  Instead, on August 27, 2019, long after discovery closed, the Wyman Plaintiffs attempted to disclose an untimely fourth supplement containing, in part, records alleged to be Plaintiff Jennifer Wyman's tax returns.  But at a hearing on Smart's motion to strike this fourth supplement as untimely, the Wyman Plaintiffs agreed **"[t]he tax returns of Jennifer Wyman are withdrawn**."  See ECF No. 206 at 2:25.

Approximately one month after this Court denied their motion for partial summary judgment on their wage loss claim, the Wyman Plaintiffs procured from Dr. Clauretie a single paragraph letter, dated August 18, 2020, claiming that—*after three years*—his "preliminary" report was now "final."  According to that letter, Dr. Clauretie could offer a final opinion because he had "subsequently received income information from 2011 to 2013."[5]  **Once again, no party has produced any records reflecting "income information for 2011 to 2013"**—and discovery closed nearly three years ago.

To summarize, no records reflecting any income information for the Wymans at any time relevant were produced in this case within the discovery period.  And this Court has already found "that the pre-2014 earnings data is not newly discovered evidence.  It was always in the possession and control of the Wymans[.]"  ECF No. 320 at 6:1-4.  At any rate, Jennifer Wyman testified at her deposition that she did not remember what, *if any*, information she actually provided to Dr. Clauretie.[6]  Moreover, the description of the "income information" reviewed by Dr. Clauretie in

---

[4] Preliminary Report of Terrence Clauretie, EX8PRL002, **Exhibit D**.
[5] Wyman Plaintiffs' Fourth Supplemental Expert Disclosure and Supplemental Pre-Trial Disclosures, **Exhibit E**.
[6] Deposition of Jennifer Wyman, 21:16-23:25, relevant portions attached as **Exhibit F**.

forming his final opinion is so vague that it is impossible to discern with certainty what "income information" was allegedly provided, and whether such information was even relevant to the case and issues at hand, let alone authentic.

## II.   LEGAL ARGUMENT

**A. Terrance Clauretie Should Be Stricken for Untimely Disclosure.**

The Court should exclude Terrance Clauretie because Plaintiffs failed to properly and timely disclose him as a designated expert. Specially retained expert witnesses are required to comply with Fed. R. Civ. P. 26(a)(2)(B) report requirements. And when a party fails to make mandatory Rule 26(a) disclosures, the automatic or self-executing consequence is that "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1); *see also* Fed. R. Civ. P. 37 Advisory Comm. Notes (1993).

Under this Court's scheduling orders (2:16-CV-02378, ECF No. 25, other deadlines subsequently extended at 2:16-cv-01206, ECF No. 30)—***a schedule Plaintiffs stipulated to***—the deadline for designating expert witnesses expired on **June 2, 2017**. As that deadline expired, Plaintiffs failed to perform their duty to disclose to the other parties a written report containing "(i) a *complete* statement of all opinions the witness will express *and the basis and reasons for them*; (ii) *the facts or data considered* by the witness in forming them; [and] (iii) *any exhibits that will be used to . . . support them*[.]" Fed. R. Civ. P. 26(a)(2)(B)(i)-(iii); Eagles v. Colorado Belle Corp., 179 F.R.D. 296, 300 (D. Nev. 1998) (expert's report must be "detailed and complete"); Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) ("an expert witness must produce all data she has considered in reaching her conclusions"); *see also* 26(a)(2)(D) ("[a] party must make these disclosures at the times and in the sequence that the court orders"). It is indisputable that Plaintiffs disclosed only a "preliminary" report in lieu of a "*complete* statement of all opinions" for Dr. Clauretie. Likewise, the record is clear that Plaintiffs failed to disclose the full "basis and reasons" for Dr. Clauretie's opinions as well as the financial information/exhibits considered by Dr. Clauretie to support his opinions.

No plausible argument exists that Plaintiffs did not understand that they had failed to

disclose a *complete* statement, the full "basis and reasons," or even the full "facts or data" considered by Dr. Clauretie by the expert disclosure deadline. Plaintiffs' June 2, 2017 designation of Terrance Clauretie, identified his report by its title: "*Preliminary Report on the Loss in Financial Support: Mr. Charles Wyman.*" Furthermore, the report itself states that it is "*preliminary as [Dr. Clauretie is] awaiting income information prior to 2014.*"[7] Nevertheless, by the time that the stipulated discovery period closed four months later, on October 2, 2017, Plaintiffs still had not disclosed the facts or data considered by Dr. Clauretie, nor even a final report. And Plaintiffs never attempted to obtain a timely extension to introduce any new evidence supporting Dr. Clauretie's opinions.

Instead of disclosing Dr. Clauretie's final estimate concerning Plaintiffs' lost wages claim on June 2, 2017 as required by the scheduling order and the rules of the court, Plaintiffs delayed until September 1, 2020—more than three years later (and nearly as long after discovery closed)—to disclose Dr. Clauretie's final estimate in a very untimely *Fourth Supplemental Expert Disclosure* and denied Smart any meaningful opportunity to conduct discovery regarding Dr. Clauretie's opinions.

**B.   Terrance Clauretie's Opinions Are Also Inadmissible Under Fed. R. Evid. 702.**

Trial courts are under a special obligation to serve as gatekeepers to exclude not only expert opinion that is irrelevant, but also expert opinion that is unreliable. Kumho Tire Co. v. Carmichael, 526 U.S. 137, 147 (1999); Avila v. Willits Environ. Remediation Trust, 633 F.3d 828, 836 (9th Cir. 2011). To be admissible under Fed. R. Evid. 702, an expert's opinion must be founded on sufficient facts or data to render it something more than subjective belief or unsupported speculation. Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 589-90 (1993); Whole Woman's Health and Hellerstedt, 136 S. Ct. 2292, 2316 (2016); U.S. v. W.R. Grace, 504 F.3d 745, 749 (9th Cir. 2007). A party who presents an expert witness has the burden of proving each element necessary to the admissibility of the expert's testimony *by a preponderance of the evidence*. Fed. R. Evid. 702; *see also* Pooshs v. Phillip Morris USA, Inc., 287 F.R.D. 543, 546 (N.D. Cal. 2012).

The Court should exclude Terrance Clauretie because his opinions do not meet the

---

[7] **Exhibit D**, Bates Numbered EX8PRL006.

5

requirements for admissibility under Fed. R. Evid. 702. Here, nothing on record evinces that Terrance Clauretie's opinions are (1) "based on sufficient facts or data" and (2) the product of reliable principles and methods which have been "applied … reliably to the facts of the case." Fed. R. Evid. 702. After lengthy discovery and years of litigation, the record is simply devoid of any piece of evidence proving income information specific to Charles and Jennifer Wyman. No party has disclosed such records. By extension, Plaintiff cannot satisfy its burden of proof as to the admissibility of Dr. Clauretie's opinions.

As the gatekeeper, this Court must assess the reliability and helpfulness of expert testimony based on the record before it—and exclude any expert that it cannot determine is reliable and helpful. *See* Fed. R. Evid. 702 Advisory Comm. Notes (2000); Daubert v. Merrell Dow Pharmaceuticals, Inc., 113 S. Ct. 2786, 2795 (1993) ("the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable . . . [and] assist[s] the trier of fact to understand the evidence or to determine a fact in issue"). Because the foundation of Dr. Clauretie's opinions cannot be measured for reliability absent the undisclosed financial records, exclusion of those opinions is appropriate and necessary.

Furthermore, Plaintiffs cannot rely on Dr. Clauretie's "preliminary" opinions because Dr. Clauretie cannot demonstrate that those opinions are more than unsupported speculation. *See* Fed. R. Evid. 702(b) (expert may testify only if his opinion is based on sufficient facts or data); *see also* Cooper v. Brown, 510 F.3d 870, 942 (9th Cir. 2007). Indeed, in some cases, an expert's analysis may be so incomplete as to be inadmissible as irrelevant. Hemmings v. Tidyman's Inc., 285 F.3d 1174, 1188 (9th Cir. 2002) (citing Bazemore v. Friday, 478 U.S. 385, 400, 106 S.Ct. 3000, 92 L.Ed.2d 315 (1986)). Here, Dr. Clauretie's estimates are based upon almost no facts or data personal to the Plaintiffs' case—with the *possible* exception of the "Wage information (w-2's from employment 2014 to 2015)," which were not produced and vaguely referenced "income information for 2011 to 2013" referred to but not disclosed by best evidence. And his "final" report—really nothing more than a paragraph stating that he makes no changes to the "preliminary" report—also fails to introduce any additional facts or data rendering the report "final."

6

Instead, Dr. Clauretie's "preliminary" report purports to rely heavily on generic tables and/or reports (including one authored by Dr. Clauretie) that merely show statistics based on *average* households. In preparing his opinions, Dr. Clauretie did not review or rely upon health records or opinions of medical providers to support his calculation of the Wymans' life expectancies. Nor did Dr. Clauretie review or rely upon information about the Wymans' personal spending habits, tax bills, or financial assets leading to the death of Charles Wyman. Because of the paucity of personal data or facts relied upon, Dr. Clauretie's opinions should be excluded as unreliable.

Although Dr. Clauretie also claims to have relied upon a phone conversation with Jennifer Wyman on May 22, 2017, no transcript of that conversation was ever produced. Asked about that conversation, Ms. Wyman testified that she did not even remember what information, *if any*, she provided Dr. Clauretie (nor could she even recall the salary of Charles Wyman before his death).[8] Mrs. Wyman did suggest that Dr. Clauretie requested her tax return information—but she did not know whether it was successfully provided to him. Even more to the point, neither of Dr. Clauretie's reports represent that he reviewed the Wyman tax returns—further calling into question the reliability of his opinions.

At the same time, Dr. Clauretie's "preliminary" report reflects that even he believes that several years of income information would be necessary to calculate more than "preliminary" calculations of lost wages. Yet, Dr. Clauretie lacked such income information at any time prior to his designation (as well as at any time prior to the close of the discovery period). And, as far as the records reflect, he still lacks it. His "final" report does not even attempt to introduce additional facts or data. In essence, Dr. Clauretie's opinion cannot assist the trier of fact to better understand lost wage evidence that is not even before the Court. As such, the exclusion of Dr. Clauretie is appropriate and necessary.

Because Dr. Clauretie claims to have used so little verifiable information specific to the Plaintiffs, his estimates lack a reliable foundation. Instead, his calculations are really a result of assumptions made based on generic tables and reports referencing the average American family. Without specific information of the Plaintiffs' economic situation, Dr. Clauretie's testimony is too

---

[8] *See* **Exhibit F**, 21:16-23:25.

7

speculative to assist the jury and too incomplete to be relevant. Accordingly, Dr. Clauretie should be stricken as a witness.

Furthermore, the absence of any evidence of income information specific to Charles and Jennifer Wyman prevents this Court (and Smart) from determining whether Dr. Clauretie has reliably applied reliable principles and methods to the Wymans' income information. Accordingly, this Court must exclude Dr. Clauretie because his opinions cannot be determined to be based on sufficient facts or data, and cannot be determined to be the product of reliable principles and methods that have been reasonably and reliably applied to the facts of the case.

**C. Allowing Terrance Clauretie's Opinions Would Also Unfairly Prejudice Smart at Trial; Wymans' Undisclosed Income Information Cannot Be Introduced for Substantive Purposes.**

Even if Dr. Clauretie's opinions were admissible as expert testimony (when they are not), the Plaintiffs' failure to timely produce the facts and data upon which it purports to rely renders its use at trial far too unfairly prejudicial and confusing to admit. "Otherwise admissible expert testimony may be excluded under Fed. R. Evid. 403 if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or undue delay." United States v. Hoac, 990 F.2d 1099, 1103 (9th Cir. 1993).

Plaintiffs should not be permitted to unfairly benefit from their own evasion of multiple discovery rules and the deadlines set by this Court's scheduling order (ECF No. 40)—*a scheduling order Plaintiffs stipulated to*—and allowed to introduce undisclosed evidence and opinion through Terrance Clauretie's testimony. This Court has already found "that the pre-2014 earnings data is not newly discovered evidence. *It was always in the possession and control of the Wymans*[.]" ECF No. 320 at 6:1-4 (emphasis added). Despite the undisputable fact that the Wyman Plaintiffs controlled all such data (pre-2014 *and post-2014*) prior to the initiation of litigation, Plaintiffs failed in their duty to produce all such evidence during the discovery period—unfairly prejudicing Smart by leaving it without sufficient facts or data to retain a rebuttal expert or to properly prepare to examine Terrance Clauretie in deposition or at trial. Based on the reports by Dr. Clauretie, the finality of his estimates and opinions remained an open-ended question throughout all of the discovery period, even according to Dr. Clauretie himself.

Plaintiffs failed to comply with the *many* mandates of Fed. R. Civ. P. 26(a)(1)(A)(ii)-(iii) (requiring disclosure of documentary and electronically stored evidence on which claims and damages computations may be based); (a)(2)(B)(ii) (requiring disclosure of "the facts or data considered by the expert witness"); (e)(1) (requiring supplementation of Rule 26(a) disclosures "in a timely manner"[9]); *see also* Luke v. Family Care & Urgent Med. Clinics, 323 Fed. App'x 496, 500 (9th Cir. 2009) (the duty to supplement is a duty, not a right).   And the law is clear that when a party fails to make mandatory Rule 26(a) or (e) disclosures, the automatic or self-executing consequence is that "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1); *see also* Fed. R. Civ. P. 37 Advisory Comm. Notes (1993).  Even Plaintiffs' three-years-late "final report" still failed to provide copies of any evidence tending to prove the reliability of Dr. Clauretie's opinions or establish the facts or data upon which they are based.

At the same time, Smart faithfully abided the Court's scheduling order when disclosing its expert/rebuttal expert designations and mandatory evidentiary disclosures in 2017 while waiting for the Plaintiffs to abide their equal duty to comply with the scheduling order and rules.  Accordingly, Smart lacked any meaningful opportunity to review the (yet undisclosed) facts or data purportedly relied upon by Dr. Clauretie or even the (very untimely disclosed) final report during the discovery period.  In the end, Smart lacked any meaningful opportunity to timely prepare for a deposition of Dr. Clauretie or retain its own rebuttal expert consistent with the appropriate deadlines.  And if Dr. Clauretie were to testify at trial, Smart would be unfairly prejudiced because it would have lacked any meaningful opportunity to review or consider the underlying information relied upon by Dr. Clauretie to prepare for cross-examination or to present its own competing and knowledgeable expert witness.  Accordingly, this Court should strike Dr. Clauretie as an expert witness in this case to avoid unfairly prejudicing Smart at trial.

Furthermore, allowing an expert to testify without the admission of the evidence forming the contention over which his testimony applies would serve only to confuse the jury and unduly delay

---

[9] "[T]he Court's inquiry is whether the timing is reasonable based on when the information was available to the party." Silvagni v. Wal-Mart Stores, Inc., 320 F.R.D. 237, 241 (D. Nev. 2017).  In this case, Plaintiffs had that information available to them even before initiating litigation.

justice. Indeed, if allowed to testify, jurors may well be convinced that such testimony may supplant the need for foundational evidence—neither a just nor a fair outcome. Accordingly, this Court should also strike Dr. Clauretie as an expert witness to avoid confusing the jury into relying on unproven opinion in lieu of evidence.

**D. Plaintiffs Should Not Be Rewarded for Failing to Disclose the Best Evidence Regarding Any Wage Loss Claim, Despite Their Complete Control Over that Evidence.**

Fed. R. Evid. 1002 requires an original writing or recording to prove the content of a writing or recording. This Court has already found "that the pre-2014 earnings data . . . was always in the possession and control of the Wymans," ECF 320 at 6:1-9. Likewise, the post-2014 earnings data was within the possession and control of the Wymans, even before the initiation of this lawsuit in 2016. Nevertheless, Plaintiffs alone are responsible for failing to disclose any income records or wage loss records during the entire discovery period—let alone any that could be authenticated as reliable. Accordingly, no best evidence exists on record for a jury to weigh concerning Plaintiffs' wage loss claim.

In lieu of actual (and best) evidence of any wage loss, Plaintiffs have signaled their intent to inappropriately rely solely upon testimony to prove such damages. But the risk of prejudice resulting from the jury's likely misuse of such testimony without foundational support for substantive purposes far outweighs any probative value such testimony may have in considering Dr. Clauretie's unreliable and unprovable opinions. Plaintiffs unsuccessfully motioned this Court for partial summary judgment as to the value of that claim, based solely on the preliminary report of Dr. Clauretie. Then, Plaintiff's unsuccessfully motioned this Court for reconsideration as to the value of that claim based solely on the preliminary report of Dr. Clauretie and a single paragraph letter from Dr. Clauretie claiming that the report was now "final." In both instances, Plaintiffs demonstrated to this Court that they lack any authentic and admissible evidence supportive of the value of their wage loss claim.

There is no adequate excuse as to why the "best evidence" of the value of Plaintiffs' wage

loss claim was never timely produced in this case. As this Court is well aware, "Federal Rule of Civil Procedure 26(a)(1)(A) requires all parties to a dispute to provide initial disclosures to the opposing parties without waiting for discovery requests." ECF No. 199 at 7:9-12. In fact, on March 7, 2017, Smart served the Wyman Plaintiffs with Request for Production No. 2, "Produce and separately identify all reports, correspondence, notes, and other documents prepared or provided to you by any experts in connection with this matter. Please include all drafts of the foregoing documents." The Wyman Plaintiffs responded by merely citing their Rule 26(a) disclosures.

Here, Plaintiffs' unreasonable evasion of their duty to disclose the most reliable and key evidence and information regarding wage loss and future damages prevented Smart from obtaining and preparing expert witnesses or other evidence to support its defense. This surprise is unfairly prejudicial in favor of Plaintiffs and against Smart. Accordingly, this Court should strike Dr. Clauretie as a witness in this case due to Plaintiffs' unilateral failure to produce the most important foundational evidence concerning any lost wages claim.

**E.  Plaintiffs' Should Also Be Sanctioned for Their Repeated Discovery Abuses.**

Plaintiffs have repeatedly failed to abide the discovery schedule and rules, which abusive litigation tactics include:

(1) Not disclosing an (re)assignment agreement dated July 11, 2017 until October 31, 2019 (and then only as an exhibit to a motion), *see* ECF No. 199 at 8-16;

(2) Attempting to disclose 23 new witnesses (including expert witnesses) and 17 custodians of record; 777 pages of documents (40 pages of tax returns and 737 pages of medical records and billing documents); and tens of thousands of dollars in new computations of damages on August 27, 2019, even though discovery closed on October 2, 2017, *see* generally ECF Nos. 199 (granting Smart's attorney fees as a sanction) and 206; and

(3) Not disclosing the "final" report of Dr. Clauretie until August 18, 2020 (after their motion for partial summary judgment), even though the initial expert designation was June 2, 2017 and

11

Plaintiffs never disclosed the "Wage information (w-2's from employment 2014 to 2015)" and "income information for 2011 to 2013" purportedly reviewed by Dr. Clauretie.

Such abuses warrant this Court's attention and the awarding of appropriate sanctions.

### III.     CONCLUSION

Because Dr. Clauretie's opinions and estimates are based upon information that is not personal or specific to the Plaintiffs, it is too speculative to assist the jury in deciding the Plaintiffs' damages. Further, the few pieces of information that were personal to the Plaintiffs, which Dr. Clauretie allegedly relied upon were not timely disclosed to Smart, creating an unfairly prejudicial situation where Smart has no choice but to defend against opinions based upon information to which it lacks access—*information for which neither the Court nor jurors can weigh the credibility*. For these reasons and those described in this brief, Defendant Smart Industries Corporation asks that Dr. Clauretie be stricken as a witness in this case.

BARRON & PRUITT, LLP

*/s/ Joseph Meservy*

DAVID BARRON, ESQ.
Nevada Bar No. 142
JOSEPH R. MESERVY, ESQ.
Nevada Bar No. 14088
3890 West Ann Road
North Las Vegas, Nevada 89031
*Attorneys for Defendant*
*Smart Industries Corporation*

STATE OF NEVADA )
) SS:
COUNTY OF CLARK )

I, Joseph R. Meservy, Esq. declare under penalty of perjury that the following is true and correct:

1. Declarant is over the age of eighteen, a citizen of the United States of America, an attorney licensed to practice law in the State of Nevada, and an attorney with the law firm of Barron & Pruitt, LLP, counsel for Defendant Smart Industries Corp. in this matter. As such, I have personal knowledge of the following and if called as a witness I could and would, competently testify as follows:

2. That pursuant to LR 16-3, on April 16, 2021 and April 19, 2021, Declarant and Wyman Plaintiffs' counsel, Brittany Glover, Esq. of the law firm Eglet Adams, telephonically discussed the merits of the instant motion in good faith;

3. That I asked Ms. Glover to stipulate to exclude Terrance Clauretie, PhD as a witness in this case due to Plaintiffs' failure to timely disclose a copy of his final/complete report prior to initial expert designation deadline (or the discovery cutoff) and to timely disclose any financial information relied upon by Dr. Clauretie in forming his final opinions;

4. That Ms. Glover represented to me that she consulted with another attorney at her firm, James Trummell, Esq., and subsequently informed me that her law firm would not stipulate to exclude Terrance Clauretie, PhD.

5. That after a good faith attempt consistent with LR 16-3, the Declarant and Ms. Glover have been unable to resolve this matter satisfactorily, thereby necessitating the filing of the instant motion;

I declare under penalty of perjury, pursuant to NRS 53.045, that the foregoing is true and correct.

Executed this 19th day of April, 2021 in Las Vegas, Nevada

*/s/ Joseph Meservy*
JOSEPH R. MESERVY, ESQ.

13

## Index to Exhibits

| Exhibit | Description |
|---|---|
| A | Wyman Plaintiffs' Expert Disclosure dated June 2, 2017 |
| B | Wyman Plaintiffs' First Supplemental Expert Disclosure dated Aug. 15, 2017 |
| C | Rodriguez Plaintiffs' Expert Disclosure dated Oct. 9, 2018 |
| D | Preliminary Report of Terrence Clauretie, Ph.D. |
| E | Wyman Plaintiffs' Fourth Supplemental Expert Disclosure and Supplemental Pre-Trial Disclosure |
| F | Jennifer Wyman Depositions Excerpts |

BARRON & PRUITT, LLP
ATTORNEYS AT LAW
3890 WEST ANN ROAD
NORTH LAS VEGAS, NEVADA 89031
TELEPHONE (702) 870-3940
FACSIMILE (702) 870-3950

646.01