UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\*\*\*

| | |
|---|---|
| WESCO INSURANCE COMPANY as subrogee of its insured NICKELS AND DIMES INCORPORATED,<br><br>Plaintiff,<br><br>v.<br><br>SMART INDUSTRIES CORPATION dba SMART INDUSTRIES CORP., MFG., an Iowa corporation,<br><br>Defendants. | Case No.: 2:16-cv-01206-JCM-EJY<br><br>**ORDER** |
| JENNIFER WYMAN, individually; BEAR WYMAN, a minor, by and through his natural parent JENNIFER WYMAN; JENNIFER WYMAN and VIVIAN SOOF, as Joint Special Administrators of the ESTATE OF CHARLES WYMAN; and SARA RODRIGUEZ, natural parent and guardian ad litem of JACOB WYMAN,<br><br>Plaintiffs,<br><br>v.<br><br>SMART INDUSTRIES CORPORATION d/b/a SMART INDUSTRIES CORP., MFG, an Iowa corporation; HI-TECH SECURITY INC., a Nevada corporation; WILLIAM ROSEBERRY; BOULEVARD VENTURES, LLC, a Nevada corporation; DOES I through V; DOES 1 through 10; BUSINESS ENTITIES I through V; and ROE CORPORATIONS 11 through 20, inclusive,<br><br>Defendants. | Consolidated with<br>Case No. 2:16-cv-02378-JCM-CWH |

Pending before the Court is Defendant Smart Industries Corporation dba Smart Industries Corp., MGF's ("Smart") Motion to Strike Terrence Clauretie as an Expert Witness (the "Motion"). ECF No. 331. The Court has considered Smart's Motion, Plaintiffs Sara Rodriguez and Jacob Wyman's ("Rodriguez Plaintiffs") Opposition to Smart's Motion (ECF No. 335), Jennifer Wyman,

1

Bear Wyman, and the Estate of Charles Wyman (the "Wymans" or "Wyman Plaintiffs") Opposition to Smart's Motion (ECF No. 336), and Smart's Reply in Support of its Motion. ECF No. 337.

**I.  Background**

This case is many years old with a factual and procedural background well known to the parties and the Court. Only information relevant to the instant Motion is provided here.

On June 2, 2017, the Wyman Plaintiffs disclosed Dr. Terrence Clauretie ("Clauretie") together with his preliminary expert report in which he calculated lost financial support arising from the death of Charles Wyman (the "Decedent"). There appears to be no dispute that this disclosure was timely although incomplete. The Rodriguez Plaintiffs, who were then still proceeding in state court, timely produced the same report on October 9, 2018. There appears to be no dispute that this disclosure by the Rodriguez Plaintiffs was also timely.

Smart complains that, collectively, Plaintiffs failed to produce records on which Clauretie relied when forming his opinions. Smart states that (i) no income records were produced by any of the Plaintiffs, (ii) there were no records produced with Clauretie's preliminary report, (iii) tax records produced by Jennifer Wyman on August 27, 2019 (almost two years after the close of discovery) were withdrawn at a hearing on February 25, 2020,[1] (iv) at her deposition, Jennifer Wyman could not recall what, if any, information she provided to Clauretie during a phone call that pertained to the report he was preparing, and (v) the income information reviewed by Clauretie in preparation for producing his preliminary report is so vaguely described that Smart cannot "discern with certainty what" information was supposedly provided, whether such information was relevant to the case, and whether the information was authentic.

Smart further says that at the time the preliminary report was disclosed, Plaintiffs failed to produce "a *complete* statement of all opinions" Clauretie reached, "the basis and reasons for" those opinions, "*the facts or data considered* by" Clauretie, and "*any exhibits that will be used to support*" Clauretie's opinions. ECF No. 331 at 4-5 (emphasis in original). After frequently pointing out that Clauretie identifies his June 2017 report as "preliminary" because he was "awaiting income information prior to 2014," Smart argues that Clauretie's single page final estimate of loss was

---

[1] *See* ECF No. 206.

2

produced long after discovery closed thereby precluding Smart from conducting meaningful discovery regarding Clauretie's opinions.[2]  ECF No. 331 at 5.

Smart never attacks Clauretie's qualifications.  However, Smart argues that Clauretie's preliminary report is unreliable because it is "unsupported speculation."  *Id*. at 6.  Smart states Clauretie relied on no facts or data "personal" to Plaintiffs and instead looked at statistical data regarding average households.  *Id*. at 6-7.  Smart further complains that because Jennifer Wyman does not remember her telephone conversation with Clauretie, does not know if tax returns were ever provided to Clauretie, and Clauretie's reports do not indicate he reviewed the Wyman tax returns, there is even greater concern regarding the reliability of Clauretie's opinions.  Nonetheless, Smart admits that Clauretie possibly reviewed the Decedent's wage information for 2014 and 2015.  *Id*. at 6.  Smart concludes this portion of its Motion stating that Clauretie's report is too speculative to be admissible.  *Id*. at 7-8.

Smart next argues that if Clauretie's opinions are admitted, Smart will be unfairly prejudiced because Plaintiffs will be able to introduce evidence and opinion through Clauretie's report that were not produced during discovery.  *Id*. at 8.  Smart points to its Motion for Reconsideration of an Order granting the Wyman Plaintiffs' summary judgment on past medical expenses.  ECF No. 320.  In that Order, the Court vacated summary judgment in favor of the Wyman Plaintiffs on $165,788 in past medical expenses because the Wymans had the burden of proof, which they failed to meet at summary judgment or when opposing Smart's Motion for Reconsideration.  ECF No. 320 at 4-5.  The Court's Order further concluded that the Wyman Plaintiffs' countermotion for reconsideration regarding lost future wages, on which Clauretie opined, was properly denied because "Clauretie's calculation was admittedly *preliminary* as it did not incorporate pre-2014 earnings data" and that "the pre-2014 earnings data … [was] not newly discovered evidence.  It was always in the possession and control of the Wymans and could have been given to their expert before they moved for summary judgment."  *Id*. at 5-6 (emphasis in original).  Smart concludes that because Plaintiffs failed to comply with the requirements of Federal Rule of Civil Procedure 26(a)(1)(A)(ii)-(iii), and 26(a)(2),

---

[2] Smart leaves out that Clauretie's initial report states that he does "not expect the added data will significantly alter … [his] estimate of economic loss."  ECF No. 331-1 at 7.  In fact, Clauretie's supplemental or final report, disclosed on September 1, 2020, confirms no change to the opinions expressed in his initial report.  ECF No. 336-3 at 2.

the admission of the expert testimony by Clauretie will "confuse the jury and unduly delay justice." *Id*. at 9-10.[3]

The Rodriguez Plaintiffs respond to Smart's Motion demonstrating that their expert disclosure in state court was timely, and that Smart's argument may impact the weight that should be given to Clauretie's opinions, but not their admissibility. ECF No. 335. The Rodriguez Plaintiffs point to the law that "shaky but admissible evidence is to be attacked by cross-examination, contrary evidence, and attention to the burden of proof, not exclusion." *Id*. at 3 *citing Primiano v. Cook*, 598 F.3d 645, 568 (9th Cir. 1995).

The Wyman Plaintiffs argue that (i) under Fed. R. Evid. 703, Clauretie is permitted to rely on inadmissible fact and data when forming his expert opinion, (ii) Clauretie relied on "acceptable industry standard princip[les] and methodology," (iii) Smart exaggerates its prejudice because Clauretie is qualified under *Daubert* to offer the opinions he does, and (iv) Fed. R. Civ. P. 26(a)(2)(E) allows Plaintiffs to supplement their Rule 26(a) disclosure "by the time the party's pretrial disclosure under Rule 26(a)(3) are due." ECF No. 336 at 4-5 *citing* Rule 26(e). The Wyman Plaintiffs contend that Clauretie's preliminary report was preliminary only because he did not have wage information for years prior to 2014. *Id*. at 5. The Wymans state Clauretie's "supplemental and final report" regarding Plaintiffs' economic loss was produced on August 27, 2020, after receiving 2011 to 2013 wage information that was consistent with the information Clauretie already had. *Id*. at 6. Because this information was produced more than 30 days before trial, the Wyman Plaintiffs contend the supplement was timely and compliant with Rule 26(a)(2)(E).

---

[3] In its Reply, Smart argues that Fed. R. Civ. P. 26(e), upon which the Wymans rely, does not create an entitlement to supplement an expert report, but instead creates a duty to supplement disclosures. For some reason, Smart does not quote the portion of the Rule that says supplementation must be done timely. Fed. R. Civ. P. 26(e)(1)(A) ("must supplement or correct its disclosure or response: … in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing").
  Smart also makes a best evidence argument under Fed. R. Civ. P. 1002, which is inapplicable to the issues raised by its Motion to Strike Clauretie as an expert. *Leicht v. Southwest Carpenters Pension* Plan, Case No. 12-00354 SJO (PLX), 2013 WL 1729558, at *4 (C.D. Cal. Apr. 22. 2013) ("the best evidence rule … applies only when secondary evidence is offered to prove the content of a writing. Fed. R. Evid. 1002"). Smart seeks sanctions for Plaintiffs' alleged discovery abuses. The Court declines to award sanction because Smart's current motion is denied for the reasons discussed below.

With respect to inadmissible evidence, the Wyman Plaintiffs argue it is the trial judge's discretion whether to allow the jury to review such evidence after applying a balancing test, which the Wymans further say "is not intended to affect the admissibility of an expert's testimony." *Id*. (emphasis omitted) citing to *United States v. 0.59 Acres of Land*, 109 F.3d 1493, 1496 (9th Cir. 1997). The Wyman Plaintiffs also state they "produced" the Decedent's 2014 and 2015 tax returns in March 2017, before discovery closed, but somehow inexplicably failed to include defense counsel on the certificate of service. ECF No. 336 at 8. In a footnote, the Wymans say they produced the 2014 and 2015 tax returns again in August of 2019, but then withdrew the production after Smart filed a Motion to Strike the production as untimely. *Id*. at n.2. Thus, the Wymans aver it is incorrect that no party ever produced the facts or data on which Clauretie relied. *Id*. at 8. And, the Wymans contend the fact that Clauretie had this information is borne out by Clauretie including the Decedent's earnings in his preliminary report. *Id*. citing Ex. 2 at 5.[4] If Smart believes there is some argument regarding the accuracy of data on which Clauretie relied, the Wymans argue that Smart must challenge that accuracy through cross examination. *Id*. at 9. With respect to the statistical information, the Wymans argue that the data relied on by Clauretie is the type reasonably relied on by other experts in the same field. To support his contention, the Wymans cite to a case in which an expert relied on W-2s and federal tax returns. *Id*. Discussing Smart's claim of prejudice, the Wymans argue Defendant could have hired an expert to rebut Clauretie's preliminary or final report, but they did not.[5] *Id*. The Wymans conclude that excluding Clauretie's testimony based on Smart's arguments is contrary to the Federal Rules of Evidence. *Id*. at 9-10.

The Wymans also argue that the "failure to properly disclose or supplement Dr. Clauretie's opinions … [was] substantially justified or harmless"[6] because Clauretie's preliminary report was timely disclosed and included the total loss of support, which did not change upon production of

---

[4] The Wymans say that Mrs. Wyman's verified interrogatory responses also support that Clauretie received the 2014 and 2015 tax returns. *Id*.

[5] Smart responds to this argument stating that by disclosing "only an uncommitted 'preliminary report'" the Wymans "directly impacted Smart's ability to choose whether to retain a rebuttal expert." ECF No. 337 at 6. Smart reiterates that Plaintiff "withheld all evidence of income information considered by Dr. Clauretie from Smart for the entirety of the discovery period," and points out that Clauretie's 2020 "final report" does not provide the numbers on which he relied to issue his "final" opinion. *Id*. at 8.

[6] *Id*. at 10 (capitalizations removed).

Clauretie's supplemental report.[7] Thus, the Wymans state Clauretie's opinion was not a surprise, and the supplement caused no prejudice. *Id*. The Wymans reiterate that Smart could have retained an economic expert to rebut Clauretie's opinion when Clauretie issued his preliminary report in 2017 or after the supplement was disclosed thereby curing any prejudice allegedly suffered. Finally, the Wymans argue that if the Court allows, Smart can still depose Clauretie, which will cure any prejudice it claims.[8]

As to whether Clauretie's report and opinions violate the standard set in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the Wyman Plaintiffs point to the Court's gatekeeper role and state Clauretie relied on facts available regarding the Decedent, and then used appropriate economic standards to offer earning capacity opinions. ECF No. 336 at 17. Whether Clauretie's methodology or authority for his opinions is faulty goes "to the weight, not the admissibility, of his testimony." *Id*. at 18 (case citations omitted).

## II. Discussion

### A. Rule 702 of the Federal Rules of Evidence.

Admissibility of expert testimony in a civil proceeding is governed by Fed. R. Evid. 702, which states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

In *Barabin v. Asent Johnson, Inc.*, 740 F.3d 457, 463 (9th Cir. 2014), the Ninth Circuit explains that "[w]e have interpreted Rule 702 to require that expert testimony … be both relevant and reliable." (Internal citations and quote marks omitted.) Relevancy, as stated by the court, requires "the evidence … logically advance a material aspect of the party's case." *Id*. (Citation

---

[7] *Id*. at 12.
[8] In Reply, Smart points out that the Wymans offered no basis that would justify their "multi-year delay in disclosing the income information they possessed and controlled to Dr. Clauretie …." ECF No. 337 at 6. Smart responds to the Wymans' cure argument stating that reopening discovery for the third time, to allow for the deposition of Clauretie, would disrupt the schedule of the Court. *Id*. at 9.

omitted.) Reliability encompasses "whether an expert's testimony has a reliable basis in the knowledge and experience of the relevant discipline." *Id. citing Kumbo Tire Co. Ltd. v. Carmichael*, 526 U.S. 137, 149 (1999). "[E]videntiary reliability is based upon scientific validity." *Id. citing Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 590 n.9 (1993). The role of the Court, however, is not to determine the "correctness of the expert's conclusions but the soundness of his methodology." *Id. citing Primiano v. Cook*, 598, F.3d 558, 564 (9th Cir. 2010).

When considering reliability, a flexible concept, the U.S. Supreme Court suggests several factors for the Court to consider, including: "1) whether a theory or technique can be tested; 2) whether it has been subjected to peer review and publication; 3) the known or potential error rate of the theory or technique; and 4) whether the theory or technique enjoys general acceptance within the relevant scientific community." *United States v. Hankey*, 203 F.3d 1160, 1167 (9th Cir.2000) (citing *Daubert,* 509 U.S. at 592–94). But, whether these specific factors are "reasonable measures of reliability in a particular case is a matter that the law grants the trial judge broad latitude to determine." *Barabin*, 740. F.3d at 463 *citing Kumho Tire,* 526 U.S. at 153. As explained in *Barabin*, "Rule 702 clearly contemplates *some* degree of regulation of the subjects and theories about which an expert may testify." *Id.* at 464 *citing Daubert*, 509 U.S. at 589.

B. The Court's Gatekeeper Role.

The Court must be cognizant of its overall role as gatekeeper, an active and important role when examining "all forms of expert testimony, not just scientific testimony." *Hangarter v. Life and Acc. Ins. Co.*, 373 F.3d 998, 1017 (9th Cir. 2004) (citation omitted). As explained in *Hangarter*, the Ninth Circuit "require[s] a district court to make some kind of reliability determination to fulfill its gatekeeping function." *Id.* at 1018 *citing Mukhtar v. v. Cal. State Univ., Hayward*, 299 F.3d 1053, 1066 (9th Cir. 2002) *overruled*, *in part*, *on other grounds*, *Barabin*, 740 F.3d at 467. The Court's gatekeeping obligation to admit only expert testimony that is reliable and relevant is especially important "considering the aura of authority experts often exude, which can lead juries to give more weight to their testimony." *Mukhtar,* 299 F.3d at 1063–64. Nevertheless, "[s]haky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." *Primiano*, 598 F.3d at 564 *citing Daubert*, 509 at 588.

   C. <u>Clauretie's reports, albeit slim, are relevant and sufficiently reliable</u>.

As stated above, Smart does not attack Clauretie's qualification. Although Smart suggests it is challenging relevance, a review of Smart's Motion and Reply show Smart is actually challenging reliability. In fact, there is no doubt that expert testimony pertaining to the calculation of lost financial support arising from the death of Charles Wyman logically advances a material aspect of the Plaintiffs' case and therefore is relevant.

With respect to reliability, the Court finds Clauretie's opinions shaky, but admissible. Specifically, the preliminary report lists the information on which Clauretie relied. ECF No. 335 at 21. While Smart says it never received any of the information on which Clauretie relied, the fact is that the Wymans' Fourth Disclosure of Documents and Witnesses is attached to Smart's Motion to Strike this disclosure, identifying as item 16 "Plaintiff Jennifer Wyman's and Decedent Chuck Wyman's Federal Tax Return – Form 1040 for Tax Year 2014 and 2015 (PLTF000772 – PLTF000762)." ECF No. 156 at 84. The Fourth Disclosure was ultimately withdrawn, but it was nonetheless served on Smart on August 27, 2019. This belies the notion that Smart *never* received *any* of the information on which Clauretie relied.

Moreover, while the Court does not dispute that the Wymans' Fourth Disclosure was made well after the initial close of discovery, it is also true that discovery was reopened in February 2020, extended twice thereafter upon stipulation of the parties, and closed again on June 22, 2020. ECF Nos. 199, 237, 251). These extensions did not address the deposition of Clauretie; however, having received the 2014 and 2015 tax returns in August 2019, Smart could have sought the deposition of Clauretie during this four month period in 2020. Smart did not do so. This is not to say that Clauretie's preliminary report, which was the only report from Clauretie available at this time, was complete, but Smart cannot turn away from what was available and attached to Clauretie's preliminary report (substantial documentation supporting his assumptions and inferences), together with the 2014 and 2015 tax returns, and say they never had anything on which Clauretie relied to reach the opinions he did.

Further, Rule 702 does not require scientific evidence to be based on perfect, or even the best available, methodologies. *Daubert,* 509 U.S. at 596. And, Clauretie, as an expert, is entitled to use

assumptions, inferences, and comparisons when reaching opinions that are admissible but subject to impeachment. *Alaska Rent–A–Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969 (9th Cir. 2013). The Court is "supposed to screen the jury from unreliable nonsense opinions, but not exclude opinions merely because they are impeachable." *Id.* "[T]he judge should only exclude the evidence if the flaw is large enough that the expert lacks 'good grounds' for his or her conclusions." *Hardeman v. Monsanto Company*, 997 F.3d 941, 962 (9th Cir. 2021) citing *Amorgianos v. National R.R. Passenger Corp.*, 303 F.3d 256, 267 (2nd Cir. 2002) (quoting *In re Paoli*, 35 F.3d 717, 746 (3rd Cir. 1994)).

Clauretie's original, preliminary report was incomplete because Clauretie indicated he was waiting for "income information prior to 2014"; however, Clauretie also stated he did "not expect the added data … [would] significantly alter … [his] estimate of economic loss." ECF No. 335 at 35. This statement by Clauretie, available to Smart in June 2017, as well as in February 2020 when discovery was reopened, provided sufficient information to establish reliability subject to cross examination and impeachment. On September 1, 2020, the Wyman Plaintiffs produced Clauretie's supplemental or final expert opinion—a single paragraph—in which Clauretie stated that he "received income information from 2011 to 2013." ECF No. 336-3 at 2. Clauretie does not state what information he received or when he received it. But, the September 2020 report did not alter Clauretie's 2017 opinion. That this report was undeniably late and offered by the Wyman Plaintiffs only as the result of a Motion for Reconsideration filed by Smart, are issues addressed below in the discussion of justification and harmlessness arising in Fed. R. Civ. P. 37(c)(1). In sum, however, Clauretie's preliminary report, adopted as his final report in September 2020, was not so unreliable as to warrant striking of this expert. *Novalogic, Inc. v. Activision Blizzard*, 41 F.Supp.3d 885, 895 (C.D. Cal. 2013) ("[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence") (citing *Daubert*, 509 U.S. at 596).

        D.     <u>Rule 37(c) and its built in exception under subsection (1)</u>.

"Rule 26 of the Federal Rules of Civil Procedure requires the parties to disclose the identities of each expert and, for retained experts, requires that the disclosure includes the experts' written

9

reports." *Goodman v. Staples the Office Superstore, LLC*, 644 F.3d 817, 827 (9th Cir. 2011) (citing Fed. R. Civ. P. 26(a)(2)). Importantly, "[p]arties must make these expert disclosures at the times and in the sequence that the court orders." *Id*. at 827. "Rule 26(e) does not create a loophole for a party who wishes to revise its initial disclosures to its advantage after the deadline has passed." *Flonnes v. Property & Cas. Ins. Co. of Hartford*, Case No.2:12-cv-01065, 2013 WL 2285224, at *3 (D. Nev. May 22, 2013) (internal quote marks and citation omitted).

Federal Rule of Civil Procedure "37(c)(1) gives teeth to these requirements by forbidding the use at trial of any information required to be disclosed by Rule 26(a) that is not properly disclosed." *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001). Discussing Rule 37 in more detail, the court in *Yeti* (at *id*.) cited *Klonoski v. Mahlab*, 156 F.3d 255, 269 (1st Cir. 1998) for the proposition that the new Rule 37(c)(1) "clearly contemplates stricter adherence to discovery requirements ...." Moreover, this Rule is "a self-executing, automatic sanction to provide a strong inducement for disclosure of materials." *Yeti*, 259 F.3d at 1106 (citations omitted).

Despite the above, there are two recognized exceptions to Rule 37(c)(1) harsh exclusion requirements. *Id*.; *R & O Const. Co. v. Rox Pro Intern. Group, Ltd.*, Case No. 2:09-cv-01749, 2011 WL 2923703, at *3 (D. Nev. July 18, 2011). If a party who violates the Rules pertaining to expert disclosures is able to demonstrate their failure was substantially justified or harmless, then otherwise excludable evidence may be admitted. *R & O Const. Co.*, 2011 WL 2923703, at *3 (citations omitted). The Court recognizes several factors to be considered when deciding whether a violation of disclosure rules is substantially justified or harmless. *Flonnes*, 2013 WL 2285224, at *6. However, even if the Court finds Plaintiffs violated Rule 26(a) in failing to timely provide a complete expert report from Clauretie, and that the failure was neither substantially justified nor harmless, exclusion under Rule 37(c) is not a forgone conclusion as the Court may opt for other appropriate sanctions. Fed. R. Civ. P. 37(c)(1)(C) (where the court may impose other appropriate sanctions in lieu of striking damages); *see also Jackson v. United Artists Theatre Circuit, Inc.*, 278 F.R.D. 586, 594 (D. Nev. 2011) *citing Design Strategy, Inc. v. Davis,* 469 F.3d 284, 298 (2nd Cir. 2006).

In the Ninth Circuit, substantial justification or harmlessness is governed by four factors: (1) prejudice or surprise; (2) the ability to cure the prejudice; (3) the likelihood of disruption of the trial; and (4) bad faith or willfulness. *Manneh v. Inverness Medical Innovations, Inc.*, Case No. 08–cv–653, 2010 WL 3212129 at *2 (D. Nev. Aug. 12, 2010). Although a finding of willfulness or bad faith is not required in order to impose the evidence preclusion sanction, willfulness or bad faith is clearly a factor in deciding the appropriate level of sanction. The District Courts have broad discretion in imposing discovery sanctions under Federal Rule of Civil Procedure 37. *Ritchie v. United States*, 451 F.3d 1019, 1026 (9th Cir. 2006).

E.     Application of Rule 37 to the case at bar.

Neither set of Plaintiffs offers a justification for the belated 2019 disclosure of 2014 and 2015 tax information on which Clauretie relied when he produced his June 2017 report. The Wyman Plaintiffs also have not offered the 2011 through 2013 information on which Clauretie states he relied when he produced his 2020 supplemental report. The Wymans produced the supplemental report only in response to Smart's Motion for Reconsideration, which does not demonstrate justification. In sum, neither the Rodriguez nor the Wyman Plaintiffs establish "substantial justification" for the incomplete and late, final, expert report disclosed.

Looking at the harmfulness of the initially incomplete and subsequently late expert disclosures, the unjustified delay does not further the public's interest in expeditious resolution of litigation, and certainly caused some prejudice to Smart. However, the public policy favoring disposition of cases on their merits and the availability of less drastic sanctions militate in favor of considering whether these failure warrant striking Clauretie as an expert. The Court notes, as discussed above, that Smart knew of Clauretie in June 2017, and had his preliminary expert report on time. That report attached numerous exhibits, albeit not the referenced 2014 and 2015 tax returns that were finally provided to Smart in August 2019 with the Wymans' Fourth Supplemental Rule 26 disclosure. And, although this disclosure was withdrawn in response to Smart's Motion to Strike, Smart cannot dispute that it had everything on which Clauretie relied to reach his preliminary conclusions as of August 2019. Despite this disclosure and the reopening of discovery in 2020, Smart did not seek to take Clauretie's deposition. Smart also did not move to compel the disclosure

of the 2014 and 2015 tax returns after Clauretie's preliminary report was timely disclosed. Smart did not seek to compel the 2011 through 2013 information on which Clauretie states he relied when his supplemental report was produced in September 2020. In fact, there does not appear to be any correspondence to this effect. Yet, shifting the blame to Smart for the Wyman Plaintiffs' repeated failure to abide by discovery requirements under Rule 26 is not the Court's objective.

The Ninth Circuit advises that the exclusion of damages is a harsh sanction. *Yeti by Molly, Ltd.*, 259 F.3d at 1106. And, here, excluding Clauretie's reports would result in the exclusion of evidence regarding lost economic support. This outcome is far too harsh given that Smart has had Clauretie's final report since September 2020 and, as of the date of this Order (almost a year later), no trial date is set. Case law supports that the jury is entitled to decide what weight to give Clauretie's opinions. *See Amos v. Makita U.S.A.*, Case No. 2:09–cv–01304, 2011 WL 43092 (D. Nev. Jan. 6, 2011), in which the court explained why, despite unjustified substantial delay and the harm to the opposing party, striking an expert is not the proper outcome. "A party is not harmed where, even though an expert disclosure fails to satisfy Fed. R. Civ. P. 26, the party knew about the expert, knew about the content of the expert's testimony, and had an opportunity to depose the expert." *Id*. at **2, 4 (citations omitted).

In this case, the initial computation of lost financial support was provided long before a trial date, and before discovery closed. This computation, together with Clauretie's statement that he did not expect any additional information to significantly alter his estimate of economic loss, was not a surprise. The September 2020 supplement to Clauretie's initial report was provided long after discovery closed, and only in response to a motion filed by Smart, but there is still no trial date set. Smart can take the deposition of Clauretie without disrupting the trial. Nonetheless, this cures only a part of the prejudice Smart claims. Taking Clauretie's deposition does not address Smart's rebuttal expert rights, which Smart says were thwarted by the incomplete and subsequently substantially delayed expert opinions.

While the Court does not presume to understand why the Wyman Plaintiffs failed to produce the 2014 and 2015 tax returns to Smart until August 2019, or why the Wyman Plaintiffs failed to produce a final report by Clauretie until Smart filed its Motion for Reconsideration on certain

damages, the Court finds that these failures do not sound in bad faith or willfulness. Instead, the Wymans, and particularly their counsel, have shown an inattention to detail and dates imposed by the Federal Rules of Civil Procedure. Punishing the Wymans under these circumstances is too harsh a sanction. The Court finds there are appropriate sanctions that can be fashioned that punish the Wymans without striking their expert.

### III. Order

Accordingly, IT IS HEREBY ORDERED that Defendant Smart Industries Corporation dba Smart Industries Corp., MGF's Motion to Strike Terrence Clauretie as an Expert Witness (ECF No. 331) is DENIED; provided, however, that Smart shall be entitled to depose Dr. Clauretie at its convenience within 60 days of the date of this Order.

IT IS FURTHER ORDERED that pursuant to Fed. R. Civ. P. 37(c)(1), the Court enters the following additional sanctions:

1. If Smart chooses to depose Dr. Clauretie, the Wyman Plaintiffs shall be responsible for paying all of Dr. Clauretie's fees and costs associated with his deposition.

2. The Wyman Plaintiffs shall also pay the cost of the production of the transcript of Dr. Clauretie's deposition.

3. The Wyman Plaintiffs shall also pay to Smart the fees and costs associated with bringing its Motion to Strike and Reply in support thereof.

4. The Wyman Plaintiffs shall produce all documents from 2011 through 2013 reviewed by Dr. Clauretie in preparation for his final report no later than ten (10) days following the date of this Order.

5. To the extent Dr. Clauretie reviewed and/or relied on any other documents in preparation for his preliminary or final report, the Wyman Plaintiffs shall produce the same no later than ten (10) days following the date of the Order.

IT IS FURTHER ORDERED that if after Smart Industries deposes Dr. Clauretie Smart chooses to retain a rebuttal expert, it may do so and produce a report compliant with Rule 26 within 45 days of the date of Dr. Clauretie's deposition.

1  IT IS FURTHER ORDERED that Plaintiffs may depose Smart's rebuttal expert at Plaintiffs' cost within 30 days of the date the rebuttal expert report is disclosed.

IT IS FURTHER ORDERED that Plaintiffs may not offer a rebuttal by Dr. Clauretie or anyone else to Smart's rebuttal expert.

IT IS FURTHER ORDERED that discovery is closed for all purposes except as expressly stated in this Order.

IT IS FURTHER ORDERED that counsel for Smart Industries shall submit a memorandum of fees and costs incurred in bringing its Motion to Compel and Reply in Support detailing the activities, hours spent (in tenths of hours), and the rate charged by each attorney who worked on the Motion and/or Reply. Appropriate redactions from billing records for attorney client privilege and/or work product may be made for the public filing with non-redacted copies of such records filed under seal. Smart shall submit its memorandum within 14 days of this Order. The Wyman Plaintiffs shall have 10 days to file a response, if any is desired. No reply shall be permitted by Smart Industries.

DATED this 18th day of August, 2021.

ELAYNA J. YOUCHAH
UNITED STATES MAGISTRATE JUDGE